IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                           :    Chapter 11
:
DENDREON CORPORATION, et al.,                    :    Case No. 14-12515 (___)
:
Debtors.[1]                            :    Joint Administration Pending
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING (A)
THE CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, BANK
ACCOUNTS, BUSINESS FORMS, AND DEPOSIT AND INVESTMENT PRACTICES;
(B) PAYMENT OF RELATED PREPETITION OBLIGATIONS AND (C) A WAIVER
OF CERTAIN OPERATING GUIDELINES RELATING TO BANK ACCOUNTS; AND
(II) AUTHORIZING CONTINUED ENGAGEMENT IN INTERCOMPANY
TRANSACTIONS PURSUANT TO 11 U.S.C. §§ 105(a), 345, AND 363, FED. R. BANKR.
P. 6003 AND 6004, AND DEL. BANKR. L.R. 2015-2 AND 4001-3**

        The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors"), hereby move (this "Motion") this Court for entry of an interim order (the "Interim

Order") and a final order (the "Final Order"), pursuant to sections 105(a), 345 and 363 of title 11

of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2015-2 and 4001-3 of the Local

Rules for the United States Bankruptcy Court for the District of Delaware (the "Local

Bankruptcy Rules"), (i) authorizing, but not directing (a) the continued use of the Debtors'

existing cash management system, bank accounts, business forms, and deposit and investment

practices under the cash management system; (b) payment of related prepetition obligations and

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
        Dendreon Corporation (3193), Dendreon Holdings, LLC (8047), Dendreon Distribution, LLC (8598) and
        Dendreon Manufacturing, LLC (7123). The address of the Debtors' corporate headquarters is 1301 2nd Avenue,
        Seattle, Washington 98101.

(c) to the extent inconsistent with such practices, a waiver of the investment and deposit requirements of Bankruptcy Code section 345(b) and certain operating guidelines relating to bank accounts set forth in the Operating Guidelines for Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines"); and (ii) authorizing the Debtors to continue engaging in intercompany transactions in the ordinary course of business. In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration of Robert. L. Crotty in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith. In further support of this Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 345 and 363, Bankruptcy Rules 6003 and 6004, and Local Bankruptcy Rules 2015-2 and 4001-3.

3.      Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

5.      The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.      To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

7.      The Debtors and their non-debtor affiliates are biotechnology companies focused on the discovery, development and commercialization of novel therapies to significantly improve treatment options for cancer patients. The Debtors are primarily focused on commercializing PROVENGE® in the United States and around the world. PROVENGE is a first-in-class immunotherapy used to treat patients suffering from advanced-stage prostate cancer, which is the most common non-skin cancer and the second-leading cause of cancer deaths among men in the United States.

8.      Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, their capital raising and restructuring activities and the events leading to the Debtors' decision to file the Chapter 11 Cases, is set forth in detail in the First Day Declaration.[2]

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**RELIEF REQUESTED**

9.     By this Motion, the Debtors request entry of interim and final orders, pursuant to Bankruptcy Code sections 105(a), 345 and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Bankruptcy Rules 2015-2 and 4001-3, (i) authorizing (a) the Debtors to continue using their existing cash management system, bank accounts, business forms and deposit and investment practices under the cash management system, in each case subject to changes that they may make thereto in their discretion, (b) the Debtors to pay related prepetition obligations and (c) a waiver of certain operating guidelines relating to bank accounts pursuant to Bankruptcy Code section 345(b) and the U.S. Trustee Guidelines; and (ii) authorizing the Debtors to continue engaging in intercompany transactions in the ordinary course of business.[3]

**BASIS FOR RELIEF**

**A.     Cash Management System and Bank Accounts**

10.     Prior to the Petition Date, and in the ordinary course of their businesses, the Debtors maintained a cash management system designed to, among other things, efficiently collect, concentrate, invest and disburse the funds generated by the Debtors' business operations (such system, the "Cash Management System"). The Cash Management System also enables the Debtors to monitor the collection and disbursement of funds and control the administration of their Bank Accounts (as defined herein).

11.     The Debtors' personnel located at the Debtors' headquarters in Seattle, Washington, oversee all cash receipt and disbursement activity in the Cash Management

---

[3]     For the avoidance of doubt, and for ease of administration, the Debtors request that the Petition Date constitute the beginning of the postpetition period.

System. By centralizing oversight of the Cash Management System, the Debtors are able to facilitate cash forecasting and reporting, monitor collections and approve disbursement of funds, while maintaining and preserving capital, addressing the liquidity requirements of the Debtors, obtaining optimum yields, and remaining compliant with the Debtors' investment policy.

12.     The Cash Management System is composed of six bank accounts (collectively, the "Bank Accounts"), a list of which is attached hereto as Exhibit A, with U.S. Bank, N.A. ("U.S. Bank"), Morgan Stanley Smith Barney, LLC ("Morgan Stanley") and Wells Fargo Securities, LLC ("Wells Fargo") (collectively, the "Banks").[4] A chart reflecting the flow of funds through the Bank Accounts in the Cash Management System is attached hereto as Exhibit B. The following is an overview of the Cash Management System and related Bank Accounts.

   **(i)      Receipts**

13.     The Debtors' cash receipts derive primarily from the sale of PROVENGE in the United States and flow directly to a lockbox in a depository account maintained by Dendreon Distribution, LLC ("Dendreon Distribution") at U.S Bank (Acct. # XXXX-XXXX-0216, the "Receipts Account"). The Receipts Account is a zero balance account, and therefore funds are immediately transferred from the Receipts Account to a day-to-day operating account maintained by Dendreon Corporation ("Dendreon") at U.S. Bank (Acct. # XXXX-XXXX-4656, the "Operating Account"). The Debtors' other cash receipts, including vendor refunds, cash from financing and intercompany transfers also flow into the Operating Account.

---

[4]     Although we have included Morgan Stanley in the definition of Banks for the purposes of describing the Cash Management System, Morgan Stanley is a registered Broker/Dealer, a member SIPC, and not a bank.

### (ii)         Disbursements

14.     The Operating Account is also used to disburse funds on behalf of Dendreon, which is the entity through which most of the Debtors' operations are conducted. Such disbursements include, but are not limited to, payroll, healthcare, other employee benefits and general corporate expenses.[5] Dendreon disburses funds to ADP for third-party payroll services provided. Dendreon also disburses funds to Concur Technologies, Inc., ("Concur"), which provides an online automated system to process reimbursements of business expenses for Dendreon's employees.

### (iii)        Additional Accounts

15.     In addition to the accounts described above, Dendreon maintains an interest-bearing investment account at Morgan Stanley (Acct. # XXX-XXXXX-0516) (the "Investment Account"). The funds are invested in order to maximize the interest accruing on such funds through a diversified portfolio of reasonably safe and conservative investments. The Investment Account holds mutual funds, United States government securities, investment-grade corporate fixed income securities with an average duration of approximately sixty (60) days issued by entities such as Berkshire Hathaway Inc., Pepsi Americas Inc., Boeing Capital Corporation and The Walt Disney Company,  as well as cash. The Debtors transfer funds from the Investment Account to the Operating Account as needed to fund operations.  The Debtors also occasionally transfer funds from the Operating Account to the Investment Account in order to  earn investment income on excess cash.

---

[5]     Certain vendors have the ability to draw directly from the Operating Account for invoiced accounts payable pursuant to direct draw agreements.

16.     Dendreon also maintains an interest-bearing money market account at Wells Fargo relating to letters of credit required in connection with certain of its real property leases, which holds money market mutual funds (Acct. # XX-XX-6872) (the "Letters of Credit Account"). The funds are invested in a money market account in order to maximize the interest accruing on such funds.

17.     Dendreon maintains a deposit account at U.S. Bank (Acct. # XXXX-XXXX-7365, the "Deposit Account"). This account is not used on a regular basis but rather on an ad hoc basis; for example, it has been used as an escrow account.

18.     Finally, Dendreon Manufacturing, LLC maintains an account at U.S. Bank, which was opened for the purpose of settling intercompany payments between Dendreon and its non-debtor foreign affiliates (Acct. # XXXX-XXXX-9867) (the "Intercompany Account"). However, this account is not currently, and in fact never has been, in use.

**B.     Intercompany Transactions and Intercompany Claims**

19.     In the ordinary course of business, Dendreon Distribution transfers money to Dendreon from the Receipts Account to the Operating Account (the "Intercompany Transactions").  The Debtors' record any transfers of funds between the Receipts Account to the Operating Account pursuant to an automated system, and such transfers are reflected on Dendreon's trial balance. Although the Intercompany Transactions involve the transfer of funds between a bank account owned by Dendreon Distribution and a bank account owned by Dendreon Corporation, because the Company operates on a consolidated basis and Dendreon Distribution (as well as Dendreon Manufacturing, LLC and Dendreon Holdings, LLC) are disregarded entities for tax purposes, the Company maintains its books and records on a consolidated basis.

20.    The Debtors seek authority to continue the Intercompany Transactions postpetition.[6]  Because the Debtors engaged in the Intercompany Transactions on a regular basis prepetition and such transactions are common for enterprises like the Debtors, the Debtors believe that they may continue the Intercompany Transactions in the ordinary course, as contemplated by section 363(c)(1) of the Bankruptcy Code, without court approval. Nonetheless, out of an abundance of caution, the Debtors seek express authority to continue engaging in the Intercompany Transactions.

21.    Failure to continue the Intercompany Transactions in the ordinary course of the Debtors' business would unnecessarily and severely hinder operations. Dendreon, which is the entity through which the day-to-day operations for the commercialization of PROVENGE are performed, relies on the Intercompany Transactions to fund day-to-day operations. Accordingly, absent the continuation of the Intercompany Transactions, the Debtors' ability to operate their primary business during the Chapter 11 Cases would be severely prejudiced, and their ability to maximize value for creditors would be drastically reduced. Avoiding such potentially crippling hindrances by continuing the Intercompany Transactions is, therefore, in the best interests of the estates. The Debtors therefore request that the Court authorize them to continue the Intercompany Transactions in the ordinary course of business.

---

[6]    The Debtors' non-debtor foreign affiliates, Dendreon Holdings (Netherlands) B.V., Dendreon Operations B.V. and Dendreon Germany GmbH each maintain a bank account at Deutsche Bank AG. The Debtors' non-debtor foreign affiliate Dendreon U.K. Ltd. maintains a bank account at Barclays Bank PLC. As discussed above, Dendreon Manufacturing, LLC maintains the Intercompany Account, which was opened for the purpose of settling intercompany payments between Dendreon and its non-debtor foreign affiliates and is not in use. The majority of the obligations related to the Debtors' European operations are obligations of Dendreon. In addition, the foreign non-debtor subsidiaries have sufficient cash to meet their operating expenses. Based on the foregoing, during the Chapter 11 Cases, the Debtors will not make any intercompany cash transfers to any of their non-debtor foreign affiliates.

C.      **Business Forms**

22.    In the ordinary course of business, the Debtors use a number of checks, business letterhead, purchase orders, invoices, envelopes, promotional materials and other business forms and correspondence (collectively, the "Business Forms"). Given that the Business Forms were used prepetition, they do not include references to the Debtors' current status as debtors in possession. Most parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession as a result of the publicity surrounding the Chapter 11 Cases and the notice of commencement of the Chapter 11 Cases which has been or will soon be provided to parties in interest.

23.    Requiring the Debtors to change existing Business Forms would unnecessarily distract the Debtors from their restructuring efforts and impose needless expenses on the estates, without any meaningful corresponding benefit.

## APPLICABLE AUTHORITY

**A.      The Debtors Should Be Granted Authority To Continue Using Their Existing Bank Accounts And Cash Management System And A Waiver Of Any Requirement To Close Existing Accounts.**

24.    Although the Debtors maintain the Bank Accounts as part of an established Cash Management System, the U.S. Trustee Guidelines require the Debtors, as debtors in possession, to take certain actions with respect to their prepetition Bank Accounts in order for the U.S. Trustee to supervise the administration of the Chapter 11 Cases. As described in the U.S. Trustee Guidelines, the requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations and prevent the inadvertent postpetition payment of prepetition claims. The Debtors submit, however, that a waiver of certain requirements is warranted.

9

25.     Under the U.S. Trustee Guidelines, debtors in possession must, among other things, close prepetition bank accounts and open new "debtor in possession" operating, payroll and tax accounts at an authorized depository. In addition, the U.S. Trustee Guidelines prohibit disbursements other than by numbered checks, which checks must bear the applicable debtor's case name and case number, a "debtor in possession" designation and an indication of the account type. Under the circumstances, the Debtors submit that waiving compliance with the U.S. Trustee Guidelines and authorizing continued use of the Bank Accounts and the Business Forms is appropriate and in the best interests of the estates.

26.     Notwithstanding the U.S. Trustee Guidelines, the Debtors' continued use of the Bank Accounts will allow the Debtors to smoothly and orderly transition into chapter 11, and best serves all parties in interest, as it will minimize disruption of the Debtors' business. Moreover, such changeover is unnecessary because the Debtors' existing Cash Management System allows the Debtors to differentiate between prepetition and postpetition transactions, account balances and obligations.

27.     The Bank Accounts are held at three banks, two of which are authorized depositories in the District of Delaware, and all of which are financially stable banking institutions.[7]  The Bank Accounts are either insured by the FDIC up to any applicable limits, or invest primarily in high quality securities and money market mutual funds. To protect against the unauthorized payment of prepetition obligations, the Debtors represent that if they are authorized to continue to use the Bank Accounts, they will not pay, and the Banks will not be directed to pay, any debts incurred before the Petition Date, other than as authorized by this Court.

---

[7]     U.S. Bank and Wells Fargo are the Debtors' authorized depositories in the District of Delaware.

28.    The Debtors do not maintain pre-printed check stock; rather, the name of the payor entity is printed when the check is written. The Debtors are in the process of ensuring that, within a reasonable period of time after the Petition Date, subsequently written checks bear the designation "Debtor in Possession" and the number of the Chapter 11 Case. To the extent that there are potential delays implementing the changes to the Debtors' software, the Debtors seek a thirty (30) day period with which to fully implement these changes, without prejudice to its right to seek additional relief from, or time to comply with, such requirement. Moreover, any new account that the Debtors open will be (a) with a bank that is organized under the laws of the United States of America or any state therein and is insured by the FDIC and (b) designated a "Debtor in Possession" account by the relevant bank. The Debtors will provide prior notice to the U.S. Trustee and any official committee appointed in the Chapter 11 Cases of any bank accounts that are opened or closed.

29.    For these reasons, in order to avoid delays in payments to administrative creditors, to ensure as smooth a transition into chapter 11 as possible with minimal disruption, and to aid in the Debtors' efforts to maximize the value of their estates, (i) the Debtors must be permitted to continue to (a) use their integrated Cash Management System, including transferring funds between their Bank Accounts; (b) maintain their existing Bank Accounts and open new and close existing accounts, as needed, whether or not such banks are designated depositories in the District of Delaware; and (c) deduct, without further order of this Court, from the appropriate Bank Accounts the respective Bank's customary fees and expenses associated with the nature of the deposit, cash management, or custodial services rendered to the Debtors; and (ii) the requested relief must extend to any new accounts by providing that

any new account is deemed to be a Bank Account and subject to the rights, obligations and

relief granted by this Court.

30.    Pursuant to Local Bankruptcy Rule 2015-2(a), "upon motion of the debtor,

the Court may, without notice and hearing, permit the debtor to . . . use its existing bank

accounts."  Del. Bankr. L.R. 2015-2(a). In other cases of this size and nature, such as, *inter alia*,

the cases cited in paragraph 44, it has been recognized that the strict enforcement of bank

account closing requirements does not serve the purposes of chapter 11.

31.    Allowing the Debtors to utilize their Cash Management System is entirely

consistent with applicable provisions of the Bankruptcy Code. Section 363(c)(1) of the

Bankruptcy Code authorizes debtors in possession to "use property of the estate in the ordinary

course of business without notice or a hearing."  11 U.S.C. § 363(c)(1). The purpose of section

363(c)(1) of the Bankruptcy Code is to provide debtors in possession with the flexibility to

engage in ordinary course transactions required to operate their businesses, without unneeded

oversight by the Debtors' creditors or having to obtain court approval. See, e.g., In re Lavigne,

114 F.3d 379, 384 (2d Cir. 1997); In re Roth American, Inc., 975 F.2d 949, 952 (3d Cir. 1992).

32.    The Debtors' ability to continue using the Cash Management System and

engaging in related "routine transactions" falls within the parameters of section 363(c) of the

Bankruptcy Code. See, e.g., In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985) (holding that

a debtor's request for authority to continue using its existing cash management system is

consistent with section 363(c)(1) of the Bankruptcy Code).

33.    To the extent that use of the existing Cash Management System is beyond

the ordinary course of the Debtors' businesses, such use is permitted by sections 363(b)(1) and

105(a) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in

relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that the Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]."  11 U.S.C. § 105(a).

34.    Where there is a valid business justification for using property outside the ordinary course of business, the law presumes that, "'in making a business decision the directors of a corporation acted on an informed basis, in good faith[,] and in the honest belief that the action taken was in the best interests of the company.'"  In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

35.    Courts in the Third Circuit have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  See, e.g., In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part, rev'd in part, 1992 U.S. Dist. LEXIS 9460 (D. Del. July 6, 1992), aff'd in part, rev'd in part, 997 F.2d 1039 (3d Cir. 1993), cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp., 510 U.S. 1110 (1994). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." Columbia Gas, 997 F.2d at 1061.

36.    Indeed, bankruptcy courts routinely permit chapter 11 debtors to continue using their existing cash management system, generally treating requests for such relief as a

relatively routine matter. See, e.g., In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see also Columbia Gas, 136 B.R. at 934. Similar relief has also been granted by this Court in the cases cited in paragraph 44.

**B.    The Debtors Should Be Granted Authority To Honor Certain Prepetition Obligations Related To The Cash Management System.**

37.    Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors request that the Banks be permitted to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (a) all checks drawn on the Bank Accounts which were cashed at each Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; and (b) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to these Banks as service charges for the maintenance of the Cash Management System (collectively, the claims in clauses (a) and (b), the "Bank Account Claims"). The Debtors estimate that outstanding Bank Account Claims total less than $350,000 as of the Petition Date. The Debtors further request that the Banks be restrained from honoring any check, draft, wire or electronic funds transfer presented, issued or drawn on the Bank Accounts on account of a prepetition claim unless (a) authorized in an order of this Court; (b) not otherwise prohibited by a "stop payment" request received by the Bank from the Debtors; and (c) supported by sufficient funds in the Bank Account in question.

38.    As with the Cash Management System, payment of the Bank Account Claims will minimize disruption to the Debtors' operations and is therefore in the best interests of the estates. Absent payment of the Bank Account Claims, the Banks might assert setoff rights against the funds in the Bank Accounts on account of the Bank Account Claims, freeze the Bank Accounts and/or refuse to provide services to the Debtors. The payment of the Bank

Account Claims will not prejudice unsecured creditors given that, as noted above, the Banks may have setoff rights with respect to the Bank Account Claims.

39.    Both as part of this Motion and in other motions that have been concurrently filed, the Debtors are requesting authority to pay, in their sole discretion, certain prepetition obligations. With respect to some of these obligations, the Debtors issued checks prior to the Petition Date that may have yet to clear the banking system. In other instances, the Debtors will create the relevant check once the Court enters an order permitting the Debtors to do so. The Debtors intend to inform the Banks which such checks should be so honored. Therefore, the Debtors request that the Banks be authorized and directed to honor all disbursements of the Debtors from the Bank Accounts dated subsequent to the Petition Date to the extent of sufficient available funds. The Debtors further request that the Interim Order and Final Order specify that each of the Banks shall not have any liability to any party for relying on such representations. The relief is reasonable and appropriate because none of the Banks is in a position to independently verify or audit whether a particular prepetition check may be honored in accordance with an order by the Court or otherwise.

C.    **The Debtors Should Be Granted Authority To Continue To Use Existing Business Forms And Checks.**

40.    Local Bankruptcy Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

41.    In order to minimize expenses to their estates, the Debtors also seek authorization to continue using all other Business Forms, including, without limitation, correspondence, business forms (including, without limitation, letterhead, purchase orders and invoices) and checks, without reference to the Debtors' status as debtors in possession. The Debtors will make reasonable best efforts to ensure that, within a reasonable period of time after the Petition Date, subsequently issued checks bear the designation "Debtor in Possession" and the case number. However, printing such designation could involve some process implementation time. Accordingly, the Debtors request relief from compliance with such requirement for thirty (30) days and request that any order be without prejudice to their rights to seek additional relief from, or time to comply with, such requirement.

42.    Most parties doing business with the Debtors will undoubtedly be aware of the Debtors' status as debtors in possession as a result of the press releases issued by the Debtors and other press coverage. Each of the Debtors' known creditors will receive direct notice of the commencement of the Chapter 11 Cases.

43.    Finally, changing correspondence and business forms would be expensive and unnecessarily burdensome to the Debtors' estates and would not confer any benefit in the context of the Chapter 11 Cases. For these reasons, the Debtors request that they be authorized to use their existing Business Forms without being required to place the label "Debtor In Possession" on each.

44.    This Court has routinely granted the same or similar relief as requested in this Motion to chapter 11 debtors. See, e.g., In re Energy Future Holdings Corp., Case No. 14-10979 (CSS) (Bankr. D. Del. May 2, 2014 and June 4, 2014) (granting interim and final relief); In re Savient Pharms., Inc., Case No. 13-12680 (MFW) (Bankr. D. Del. Oct. 16. 2013 and Nov.

19, 2013) (granting interim and final relief); In re Exide Techs., Case No. 13-11482 (KJC)

(Bankr. D. Del. June 11, 2013 and July 24, 2013) (granting interim and final relief); In re

Synagro Techs., Inc., Case No. 13-11041 (BLS) (Bankr. D. Del. Apr. 25, 2013); In re ICL

Holding Co., Inc., Case No. 12-13319 (KG) (Bankr. D. Del. Dec. 14, 2012) (granting interim

relief).[8]

## D.    The Debtors Should Be Authorized To Continue Their Deposit And Investment Practices.

45.    The Debtors respectfully request (a) authorization to continue to deposit

and invest funds in accordance with existing practices under the Cash Management System,

subject to any reasonable changes to the Cash Management System that the Debtors may

implement (the "Deposit and Investment Practices") and (b) a waiver of the investment and

deposit requirements of Bankruptcy Code section 345(b) to the extent that such requirements

are inconsistent with the Deposit and Investment Practices. As indicated above, the Debtors

deposit funds and manage their cash in accordance with the Cash Management System

described above.

46.    Bankruptcy Code section 345(a) authorizes a debtor in possession to make

deposits or investments of estate money in a manner "as will yield the maximum reasonable

net return on such money, taking into account the safety of such deposit or investment."  11

U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United

States or by a department, agency, or instrumentality of the United States or backed by the full

faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the

estate must require from the entity with which the money is deposited or invested a bond in

---

[8]    Because of the voluminous nature of the orders cited herein, they are not attached to this Motion. Copies of these orders, however, are available on request.

favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." 11 U.S.C. § 345(b).

47.     As noted above, courts may waive compliance with section 345(b) of the Bankruptcy Code for "cause." In evaluating whether "cause" exists, courts have considered a number of factors, including, among others, the sophistication and size of a debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the funds, the debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver of the section 345(b) requirements, the potential harm to the estate and the reasonableness of such a waiver under the circumstances. See In re Serv. Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

48.     Congress enacted section 345(b) requirements primarily to apply "in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost." H.R. Rep. No. 103-835, reprinted in U.S.C.C.A.N. 3340, 3355, at 47 (1994). Thus, Congress added the waiver clause in section 345(b) of the Bankruptcy Code "to allow the courts to approve investments other than those permitted by section 345(b) for just cause." Id.

49.     The Debtors are sophisticated entities with a Cash Management System that relies on multiple banks and Bank Accounts on a daily basis. The Debtors' Bank Accounts at U.S. Bank are in a financially stable banking institution with FDIC insurance up to the applicable limit per account. To the extent the funds in these Bank Accounts exceed FDIC insured limit, the Debtors believe that the safety presented by U.S. Bank constitutes sufficient cause pursuant to Bankruptcy Code section 345(b) to allow the Debtors to deviate from approved investment and deposit practices established by the Bankruptcy Code. Additionally, it would be overly burdensome and impractical for the Debtors to direct their limited finance

personnel to open and manage multiple accounts to keep funds in each account under the FDIC insured limit. To force the Debtors to do so would critically harm the Debtors' ability to maintain its business operations, as the Debtors would have to access several accounts to pay payroll and accounts payable invoices which usually aggregate well over $250,000 in any given week. Moreover, the Investment Account at Morgan Stanley and the Letters of Credit Account at Wells Fargo hold conservative and prudent investments and are necessary to the Debtors' continuing operations. Thus, such accounts and investments are safe, prudent, commercially reasonable and satisfy the goal of protecting principal (even if they do not strictly comply with all of the requirements of section 345 of the Bankruptcy Code). Forcing strict compliance with section 345 of the Bankruptcy Code would be unduly burdensome and distracting to the Debtors.

50.     This Court has granted requests to approve the use of deposit and investment practices that do not comply strictly with Bankruptcy Code section 345(b) but that, as here, are safe and prudent. See, e.g., In re Energy Future Holdings Corp., Case No. 14-10979 (CSS) (Bankr. D. Del. May 2, 2014); In re Savient Pharm., Inc., Case No. 13-12680 (MFW) (Bankr. D. Del. Oct. 16, 2013); In re Exide Techs., Case No. 13-11482 (KJC) (Bankr. D. Del. June 11, 2013 and July 24, 2013) (granting interim and final relief); In re Synagro Techs., Inc., Case No. 13-11041 (BLS) (Bankr. D. Del. Apr. 25, 2013 and May 23, 2013) (granting interim and final relief); In re ICL Holding Co., Inc., Case No. 12-13319 (KG) (Bankr. D. Del. Dec. 14, 2012) (granting interim relief). Accordingly, the Court should authorize the Debtors to continue to deposit funds and invest in accordance with the Deposit and Investment Practices and grant a waiver of the investment and deposit requirements of

Bankruptcy Code section 345(b) to the extent that the requirements are inconsistent with the Deposit and Investment Practices.

**E.      The Court Should Authorize The Debtors To Continue Intercompany Transactions.**

51.     The Bankruptcy Code affords debtors in possession the freedom to obtain unsecured credit and incur unsecured debt in the ordinary course of business without notice and hearing. See 11 U.S.C. § 364(a); see also Mulligan v. Sobiech, 131 B.R. 917, 921 (S.D.N.Y. 1991). The Debtors therefore seek authority, to the extent necessary, to obtain unsecured credit and incur unsecured debt in the ordinary operation of their Cash Management System, including in connection with the Intercompany Transactions.

52.     In the ordinary course of business and in connection with the Cash Management System, the Debtors engage in various Intercompany Transactions. As described above, the Intercompany Transactions between and among the Debtors provide essential working capital and necessary efficiencies to the Debtors.

53.     Accordingly, the Debtors request that the Court authorize the Debtors to continue engaging in Intercompany Transactions in connection with their continued use of the Cash Management System. As with the Cash Management System, authorizing the Debtors to continue the Intercompany Transactions is appropriate under sections 363(b) or 363(c) of the Bankruptcy Code, and is an appropriate exercise of the Court's equitable powers under section 105(a) of the Bankruptcy Code. See, e.g., In re General Growth Props. Inc., 412 B.R. 609, 610-11 (Bankr. S.D.N.Y. 2009) (holding that debtors were authorized to continue prepetition cash management practices, including intercompany transactions, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code).

54. Authorization to engage in intercompany transactions, similar to the relief requested here, has been granted in other chapter 11 cases in this district. See, e.g., In re Energy Future Holdings Corp., Case No. 14-10979 (CSS) (Bankr. D. Del. May 2, 2014 and June 4, 2014) (granting interim and final relief); In re Savient Pharms., Inc., Case No. 13-12680 (MFW) (Bankr. D. Del. Oct. 16. 2013 and Nov. 19, 2013) (granting interim and final relief); In re Exide Techs., Case No. 13-11482 (KJC) (Bankr. D. Del. June 11, 2013 and July 24, 2013) (granting interim and final relief); In re Synagro Techs., Inc., Case No. 13-11041 (BLS) (Bankr. D. Del. Apr. 25, 2013 and May 23, 2013) (granting interim and final relief); In re ICL Holding Co., Inc., Case No. 12-13319 (KG) (Bankr. D. Del. Dec. 14, 2012) (granting interim relief).

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

55. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm). The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh, 235 F. App'x 907, 910 (3d Cir. 2007) (citing Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. See, e.g., Acierno v. New Castle Cnty., 40 F.3d 645, 653-55 (3d Cir. 1994). The Debtors submit that for the reasons already set forth

21

herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

56.    The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

57.    Notice of this Motion shall be given to: (i) the U.S. Trustee, (ii) the indenture trustee for the 2.875% Convertible Senior Notes due 2016, (iii) counsel to the Unaffiliated Noteholders, (iv) counsel to the Deerfield Noteholders, (v) the parties included on the Debtors' list of twenty (20) largest unsecured creditors and (vi) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

58.    No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and the Final Order, substantially in the forms annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
November 10, 2014

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Sarah E. Pierce*
Anthony W. Clark (I.D. No. 2051)
Sarah E. Pierce (I.D. No. 4648)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

Kenneth S. Ziman (*pro hac vice admission pending*)
Raquelle L. Kaye (*pro hac vice admission pending*)
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

- and -

Felicia Gerber Perlman (*pro hac vice admission pending*)
155 N. Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

Proposed Counsel for Debtors and Debtors in Possession

**EXHIBIT A**

**Debtors' Bank Accounts**

| Bank | Account Number | Account Holder | Description |
|------|---------------|----------------|-------------|
| **U.S. Bank, N.A.**<br>P.O. Box 1800<br>St. Paul, MN 55101-0800 | XXXX-XXXX-4656 | Dendreon Corporation | Operating Account |
| | XXXX-XXXX-0216 | Dendreon Distribution, LLC | Receipts Account |
| | XXXX-XXXX-7365 | Dendreon Corporation | Deposit Account |
| | XXXX-XXXX-9867 | Dendreon Manufacturing, LLC | Intercompany Account |
| **Morgan Stanley Smith Barney, LLC**<br>555 California St., 35th Floor<br>San Francisco, CA 94104 | XXX-XXXXX-0516 | Dendreon Corporation | Investment Account |
| **Wells Fargo Securities, LLC**<br>999 3rd Avenue, 11th Floor<br>Seattle, WA 98104 | XX-XX-6872 | Dendreon Corporation | Letters of Credit Account |

## EXHIBIT B

**Cash Management System Flow Chart**





All operating disbursements (incl. vendors, payroll, etc.)
All other cash receipts
Non-debtor foreign affiliates bank accounts
US Bank, N.A.
XXXXXXXX4656
(Operating Account)
(Held by Dendreon Corp.)
US Bank, N.A.
XXXXXXXX9867
(Intercompany Account)
(Held by Dendreon Manufacturing, LLC)
US Bank, N.A.
XXXXXXXX0216
(Receipts Account)
(Held by Dendreon Distribution, LLC)
Wells Fargo, N.A.
XXXX6872
(Letters of Credit Account)
(Held by Dendreon Corp.)
US Bank, N.A.
XXXX7365
(Deposit Account)
(Held by Dendreon Corp.)
Morgan Stanley Smith Barney, LLC
XXXXXXXX0516
(Investment Account)
(Held by Dendreon Corp.)
Accounts receivable collection
Legend
Debtor Bank Accounts
Functions related to bank accounts

## EXHIBIT C

**Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| DENDREON CORPORATION, et al., | : | Case No. 14-12515 (___) |
| | : | |
| Debtors.[1] | : | Jointly Administered |
| | : | |
| | : | **Related Docket No. ____** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INTERIM ORDER (I) AUTHORIZING (A) THE CONTINUED USE OF EXISTING
CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, BUSINESS FORMS, AND
DEPOSIT AND INVESTMENT PRACTICES; (B) PAYMENT OF RELATED
PREPETITION OBLIGATIONS AND (C) A WAIVER OF CERTAIN OPERATING
GUIDELINES RELATING TO BANK ACCOUNTS; AND (II) AUTHORIZING
CONTINUED ENGAGEMENT IN INTERCOMPANY TRANSACTIONS PURSUANT
TO 11 U.S.C. §§ 105(a), 345 AND 363, FED. R. BANKR. P. 6003 AND 6004,
AND DEL. BANKR. L.R. 2015-2 AND 4001-3**

Upon the motion (the "Motion")[2] of the Debtors for an interim order (the "Order"),

pursuant to sections 105(a), 345 and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and

6004, and Local Bankruptcy Rules 2015-2 and 4001-3, (i) authorizing, but not directing (a) the

continued use of the Debtors' existing cash management system, bank accounts, business forms,

and deposit and investment practices under the cash management system; (b) payment of related

prepetition obligations; and (c) to the extent inconsistent with such practices, a waiver of

investment and deposit requirements of Bankruptcy Code section 345(b) and the U.S. Trustee

Guidelines; and (ii) authorizing the Debtors to continue engaging in intercompany transactions in

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Dendreon Corporation (3193), Dendreon Holdings, LLC (8047), Dendreon Distribution, LLC (8598) and Dendreon Manufacturing, LLC (7123). The address of the Debtors' corporate headquarters is 1301 2nd Avenue, Seattle, Washington 98101.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the First Day Declaration.

the ordinary course of business; and upon the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

**ORDERED, ADJUDGED AND DECREED that:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The final hearing on this Motion is set for _____ ___, 2014, at __:__ [a.m./p.m.] (prevailing Eastern Time). Any objections or responses to entry of the proposed Final Order shall be filed and served, so as to be received by 4:00 p.m. (prevailing Eastern Time) no later than seven (7) days prior to the final hearing, upon: (i) the Debtors, care of Dendreon Corporation, 200 Crossing Boulevard, Bridgewater, NJ 08807, Attention: Robert L. Crotty, (ii) proposed counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, Attention: Kenneth S. Ziman and 155 North Wacker Drive, Chicago, Illinois 60606, Attention: Felicia Gerber Perlman and One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attention: Sarah E. Pierce, (iii) counsel to the Unaffiliated Noteholders, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attention: Steven D. Pohl, (iv) counsel to the Deerfield Noteholders, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, Attention: John C. Longmire and (v) the U.S. Trustee.

3.      Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors, in their discretion, are authorized, but not directed, to (i) designate, maintain and continue to use any and all of their Bank Accounts in existence as of the Petition Date, with the same account

numbers, including the accounts identified in <u>Exhibit A</u> annexed hereto, and need not comply with certain operating guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines; (ii)  close existing accounts; (iii) open new accounts; and (iv) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacity as debtors in possession; <u>provided</u>, <u>however</u>, that the Debtors are only authorized to open new bank accounts (a) after providing notice to the U.S. Trustee and any official committee appointed in the Chapter 11 Cases; (b) with a bank that (x)  is organized under the laws of the United States of America or any state therein, (y)  is insured by the FDIC, and (z) is an authorized depository in the District of Delaware or has executed, or is willing to immediately execute, a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware; and (c) that are designated "Debtor in Possession" accounts by the relevant bank.

4.     The relief granted in the Order is extended to any new bank account opened by the Debtors, in accordance with the provisions of this Order, after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened.

5.     To the extent the Debtors close bank accounts, they shall provide notice to the U.S. Trustee and any official committee appointed in the Chapter 11 Cases.

6.     The Debtors shall not make any intercompany transfers to non-debtor affiliates absent further order of the Court.

7.     Within fifteen (15) days from the date of entry of the Order, the Debtors shall (a) contact each of the Debtors' Banks; (b) provide the Debtors' Banks with each of the Debtors' employer identification numbers; and (c) identify each of their accounts held at the Debtors' Banks as being held by a debtor in possession.

8.     The Debtors are authorized, but not directed, to continue to use their existing Business Forms without alteration or change and without the designation "Debtor in Possession" imprinted upon them; provided, however, that, within thirty (30) days following the Petition Date, subsequently issued checks bear the designation "Debtor in Possession" and the case number; provided further that the foregoing shall be without prejudice to the Debtors' rights to seek further relief from this requirement or additional time to comply.

9.     The Debtors are authorized to continue to use their existing Cash Management System.  The Debtors may, in the ordinary course of business, transfer funds into, out of, and through the Cash Management System in accordance with the Debtors' prepetition practices.  In connection with the ongoing utilization of their Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.  Except as otherwise set forth herein, the Debtors are further authorized to implement any changes to the Cash Management System that they deem appropriate in their discretion.

10.     The requirements of the U.S. Trustee Guidelines that the Debtors close all existing bank accounts and open new debtor in possession accounts are hereby waived.  Further, the requirements of the U.S. Trustee Guidelines that the Debtors establish specific bank accounts for tax payments are hereby waived.

11.     The Bank Accounts are deemed debtor in possession accounts.  The Debtors are authorized, but not directed, to maintain and use the Bank Accounts in the same manner and with the same account numbers, styles and document forms as those employed prior to the Petition Date, including, without limitation: (a) to deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers and other debits; (b)

4

to pay postpetition ordinary course bank fees in connection with the Bank Accounts; (c) to perform their obligations under the documents and agreements governing the Bank Accounts; and (d) to treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as debtors in possession.

12.     After the Petition Date, and subject to the terms of the Order, the Debtors' Banks are authorized and directed to continue to administer the Bank Accounts as such accounts were maintained prepetition, without interruption and in the usual and ordinary course, and to debit the Debtors' Bank Accounts in the ordinary course of business without the need for further order of this Court for: (a) all checks drawn on the Bank Accounts which were cashed at the Debtors' Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; and (b) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Debtors' Banks as service charges for the maintenance of the Debtors' Cash Management System.

13.     Notwithstanding anything in this Order to the contrary, no checks, drafts, wires or electronic fund transfers (excluding any electronic fund transfers that the Debtors' Banks are obligated to settle), or other items presented, issued, or drawn on the Bank Accounts prior to the Petition Date shall be honored, unless (a) authorized by order of this Court; (b) not otherwise prohibited by a "stop payment" request timely received by the Debtors' Banks from the Debtors; and (c) supported by sufficient funds in the Bank Account in question.

14.     Subject to the provisions of the Order, the Debtors' Banks are authorized and directed to honor all disbursements of the Debtors from the Bank Accounts dated subsequent to the Petition Date to the extent of sufficient available funds.

15.     The Debtors' Banks are further authorized and directed to (a) honor the Debtors' directions with respect to the opening or closing of any Bank Account and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; provided that the Debtors' Banks shall not have any liability to any party for relying on such representations.

16.     The Debtors are authorized to continue engaging in Intercompany Transactions in connection with the Cash Management System in the ordinary course of business.

17.     The requirements of section 345 of the Bankruptcy Code shall be waived with respect to the Bank Accounts and any other accounts of the Debtors with the banks.

18.     The Debtors shall serve a copy of the Order on the Debtors' Banks within five (5) business days of the entry of the Order, and upon any bank at which the Debtors open a new bank account, immediately upon the opening of such new account.

19.     To the extent applicable, the Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

20.     Notwithstanding Bankruptcy Rule 6004(h), the Order shall be effective and enforceable immediately upon entry hereof.

21.     To the extent any other order is entered by this Court directing the Debtors' Banks to honor checks, drafts, automated clearing house transfers, or other electronic funds transfers or any other withdrawals made, drawn, or issued in payment of prepetition claims, the obligation to honor such items shall be subject to the Order.

22.     The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

6

23.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

24.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware

_____, 2014


_____
UNITED STATES BANKRUPTCY JUDGE

<u>**EXHIBIT A**</u>

**Debtors' Bank Accounts**

| <u>Bank</u> | <u>Account Number</u> | <u>Account Holder</u> | <u>Description</u> |
|---|---|---|---|
| **U.S. Bank, N.A.**<br>P.O. Box 1800<br>St. Paul, MN 55101-0800 | XXXX-XXXX-4656 | Dendreon Corporation | Operating Account |
| | XXXX-XXXX-0216 | Dendreon Distribution, LLC | Receipts Account |
| | XXXX-XXXX-7365 | Dendreon Corporation | Deposit Account |
| | XXXX-XXXX-9867 | Dendreon Manufacturing, LLC | Intercompany Account |
| **Morgan Stanley Smith Barney, LLC**<br>555 California St., 35th Floor<br>San Francisco, CA 94104 | XXX-XXXXX-0516 | Dendreon Corporation | Investment Account |
| **Wells Fargo Securities, LLC**<br>999 3rd Avenue, 11th Floor<br>Seattle, WA 98104 | XX-XX-6872 | Dendreon Corporation | Letters of Credit Account |

# EXHIBIT D

## Proposed Final Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

|  |  |
|---|---|
| In re: | Chapter 11 |
| DENDREON CORPORATION, et al., | Case No. 14-12515 (___) |
| Debtors.[1] | Jointly Administered |
|  | **Related Docket No. ____** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FINAL ORDER (I) AUTHORIZING (A) THE CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, BUSINESS FORMS, AND DEPOSIT AND INVESTMENT PRACTICES; (B) PAYMENT OF RELATED PREPETITION OBLIGATIONS AND (C) A WAIVER OF CERTAIN OPERATING GUIDELINES RELATING TO BANK ACCOUNTS; AND (II) AUTHORIZING CONTINUED ENGAGEMENT IN INTERCOMPANY TRANSACTIONS PURSUANT TO 11 U.S.C. §§ 105(a), 345 AND 363, FED. R. BANKR. P. 6003 AND 6004, AND DEL. BANKR. L.R. 2015-2 AND 4001-3**

Upon the motion (the "Motion")[2] of the Debtors for a final order (the "Order"),

pursuant to sections 105(a), 345 and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and

6004, and Local Bankruptcy Rules 2015-2 and 4001-3, (i) authorizing, but not directing (a) the

continued use of the Debtors' existing cash management system, bank accounts, business forms,

and deposit and investment practices under the cash management system; (b) payment of related

prepetition obligations; and (c) to the extent inconsistent with such practices, a waiver of

investment and deposit requirements of Bankruptcy Code section 345(b) and the U.S. Trustee

Guidelines; and (ii) authorizing the Debtors to continue engaging in intercompany transactions in

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Dendreon Corporation (3193), Dendreon Holdings, LLC (8047), Dendreon Distribution, LLC (8598) and Dendreon Manufacturing, LLC (7123). The address of the Debtors' corporate headquarters is 1301 2nd Avenue, Seattle, Washington 98101.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the First Day Declaration.

the ordinary course of business; and upon the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

**ORDERED, ADJUDGED AND DECREED that:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors, in their discretion, are authorized, but not directed, to (i) designate, maintain and continue to use any and all of their Bank Accounts in existence as of the Petition Date, with the same account numbers, including the accounts identified in Exhibit A annexed hereto, and need not comply with certain operating guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines; (ii)  close existing accounts; (iii) open new accounts; and (iv) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacity as debtors in possession; provided, however, that the Debtors are only authorized to open new bank accounts (a) after providing notice to the U.S. Trustee and any official committee appointed in the Chapter 11 Cases; (b) with a bank that (x)  is organized under the laws of the United States of America or any state therein, (y)  is insured by the FDIC, and (z) is an authorized depository in the District of Delaware or has executed, or is willing to immediately execute, a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware; and (c) that are designated "Debtor in Possession" accounts by the relevant bank.

3.      The relief granted in the Order is extended to any new bank account opened by the Debtors, in accordance with the provisions of this Order, after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened.

4.      To the extent the Debtors close bank accounts, they shall provide notice to the U.S. Trustee and any official committee appointed in the Chapter 11 Cases.

5.      The Debtors shall not make any intercompany transfers to non-debtor affiliates absent further order of the Court.

6.      Within fifteen (15) days from the date of entry of the Order, the Debtors shall (a) contact each of the Debtors' Banks; (b) provide the Debtors' Banks with each of the Debtors' employer identification numbers; and (c) identify each of their accounts held at the Debtors' Banks as being held by a debtor in possession.

7.      The Debtors are authorized, but not directed, to continue to use their existing Business Forms without alteration or change and without the designation "Debtor in Possession" imprinted upon them; provided, however, that, within thirty (30) days following the Petition Date, subsequently issued checks bear the designation "Debtor in Possession" and the case number; provided further that the foregoing shall be without prejudice to the Debtors' rights to seek further relief from this requirement or additional time to comply.

8.      The Debtors are authorized to continue to use their existing Cash Management System.  The Debtors may, in the ordinary course of business, transfer funds into, out of, and through the Cash Management System in accordance with the Debtors' prepetition practices.  In connection with the ongoing utilization of their Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.  The Debtors are further

authorized to implement any changes to the Cash Management System that they deem appropriate in their discretion.

9.      The requirements of the U.S. Trustee Guidelines that the Debtors close all existing bank accounts and open new debtor in possession accounts are hereby waived.  Further, the requirements of the U.S. Trustee Guidelines that the Debtors establish specific bank accounts for tax payments are hereby waived.

10.      The Bank Accounts are deemed debtor in possession accounts.  The Debtors are authorized, but not directed, to maintain and use the Bank Accounts in the same manner and with the same account numbers, styles and document forms as those employed prior to the Petition Date, including, without limitation: (a) to deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers and other debits; (b) to pay postpetition ordinary course bank fees in connection with the Bank Accounts; (c) to perform their obligations under the documents and agreements governing the Bank Accounts; and (d) to treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as debtors in possession.

11.      After the Petition Date, and subject to the terms of the Order, the Debtors' Banks are authorized and directed to continue to administer the Bank Accounts as such accounts were maintained prepetition, without interruption and in the usual and ordinary course, and to debit the Debtors' Bank Accounts in the ordinary course of business without the need for further order of this Court for: (a) all checks drawn on the Bank Accounts which were cashed at the Debtors' Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; and (b) all undisputed prepetition amounts outstanding as of the date hereof, if any,

owed to the Debtors' Banks as service charges for the maintenance of the Debtors' Cash Management System.

12.     Notwithstanding anything in this Order to the contrary, no checks, drafts, wires or electronic fund transfers (excluding any electronic fund transfers that the Debtors' Banks are obligated to settle), or other items presented, issued, or drawn on the Bank Accounts prior to the Petition Date shall be honored, unless (a) authorized by order of this Court; (b) not otherwise prohibited by a "stop payment" request timely received by the Debtors' Banks from the Debtors; and (c) supported by sufficient funds in the Bank Account in question.

13.     Subject to the provisions of the Order, the Debtors' Banks are authorized and directed to honor all disbursements of the Debtors from the Bank Accounts dated subsequent to the Petition Date to the extent of sufficient available funds.

14.     The Debtors' Banks are further authorized and directed to (a) honor the Debtors' directions with respect to the opening or closing of any Bank Account and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; provided that the Debtors' Banks shall not have any liability to any party for relying on such representations.

15.     The Debtors are authorized to continue engaging in Intercompany Transactions in connection with the Cash Management System in the ordinary course of business.

16.     The requirements of section 345 of the Bankruptcy Code shall be waived with respect to the Bank Accounts and any other accounts of the Debtors with the banks.

17.     The Debtors shall serve a copy of the Order on the Debtors' Banks within five (5) business days of the entry of the Order, and upon any bank at which the Debtors open a new bank account, immediately upon the opening of such new account.

18.     To the extent applicable, the Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

19.     Notwithstanding Bankruptcy Rule 6004(h), the Order shall be effective and enforceable immediately upon entry hereof.

20.     To the extent any other order is entered by this Court directing the Debtors' Banks to honor checks, drafts, automated clearing house transfers, or other electronic funds transfers or any other withdrawals made, drawn, or issued in payment of prepetition claims, the obligation to honor such items shall be subject to the Order.

21.     The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

22.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

23.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:  Wilmington, Delaware

_____, 2014

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**Debtors' Bank Accounts**

| Bank | Account Number | Account Holder | Description |
|---|---|---|---|
| **U.S. Bank, N.A.**<br>P.O. Box 1800<br>St. Paul, MN 55101-0800 | XXXX-XXXX-4656 | Dendreon Corporation | Operating Account |
| | XXXX-XXXX-0216 | Dendreon Distribution, LLC | Receipts Account |
| | XXXX-XXXX-7365 | Dendreon Corporation | Deposit Account |
| | XXXX-XXXX-9867 | Dendreon Manufacturing, LLC | Intercompany Account |
| **Morgan Stanley Smith Barney, LLC**<br>555 California St., 35th Floor<br>San Francisco, CA 94104 | XXX-XXXXX-0516 | Dendreon Corporation | Investment Account |
| **Wells Fargo Securities, LLC**<br>999 3rd Avenue, 11th Floor<br>Seattle, WA 98104 | XX-XX-6872 | Dendreon Corporation | Letters of Credit Account |