IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

In re:                          :     Chapter 11
                             :

DENDREON CORPORATION, et al.,   :     Case No. 14-12515 (___)
                             :

            Debtors.[1]       :     Joint Administration Pending
                             :
                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 1107 AND 1108, AND FED. R. BANKR. P. 6003 AND 6004 AUTHORIZING DEBTORS TO (I) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS ARISING THEREUNDER AND (II) RENEW, REVISE, EXTEND, SUPPLEMENT, CHANGE OR ENTER INTO NEW INSURANCE POLICIES**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby move (the "Motion") this Court for entry of an order, pursuant to sections 105, 361, 362, 363, 364, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing, but not directing, the Debtors to (i) maintain their existing insurance policies and pay all insurance obligations arising thereunder or in connection therewith, and (ii) renew, revise, extend, supplement, change or enter into new insurance coverage as needed in their business judgment.  In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration of Robert L. Crotty in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith.

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Dendreon Corporation (3193), Dendreon Holdings, LLC (8047), Dendreon Distribution, LLC (8598) and Dendreon Manufacturing, LLC (7123). The address of the Debtors' corporate headquarters is 1301 2nd Avenue, Seattle, Washington 98101.

In further support of this Motion, the Debtors, by and through their proposed undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are sections 105, 361, 362, 363, 364, 1107 and 1108 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004.

3.      Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

5.      The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.      To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

7.      The Debtors and their non-debtor affiliates are biotechnology companies focused on the discovery, development and commercialization of novel therapies to significantly improve treatment options for cancer patients. The Debtors are primarily focused on commercializing PROVENGE® in the United States and around the world. PROVENGE is a first-in-class immunotherapy used to treat patients suffering from advanced-stage prostate cancer, which is the most common non-skin cancer and the second-leading cause of cancer deaths among men in the United States.

8.      Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, their capital raising and restructuring activities and the events leading to the Debtors' decision to file the Chapter 11 Cases, is set forth in detail in the First Day Declaration.[2]

**A.      Overview of Insurance Policies**

9.      The Debtors maintain various insurance policies providing coverage for, among other things, workers' compensation liability, directors and officers liability, and product liability (collectively, the "Insurance Policies").  The Insurance Policies, which the Debtors have obtained through third-party insurance carriers (collectively, the "Insurance Carriers"), are listed on Exhibit A hereto.[3]

10.      The Debtors believe they have paid in full all prepetition amounts due and owing pursuant to the Insurance Policies; however, out of an abundance of caution, to the extent

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3]      The Debtors believe that Exhibit A is a complete list of their Insurance Policies.  To the extent that any Insurance Policy has been omitted from that list, the Debtors request that the order granting the relief sought herein apply to any and all of Debtors' Insurance Policies.

3

that certain prepetition amounts remain outstanding, by this Motion, the Debtors request the authorization, but not the direction, to pay any such amounts.

11.     The Insurance Policies are essential to the preservation of the value of the Debtors' businesses, properties and assets.  Not only are some of the Insurance Policies required by various regulations, laws and contracts that govern the Debtors' commercial activities, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  Moreover, the Operating Guidelines for Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines") require the Debtors to maintain insurance coverage throughout the pendency of the Chapter 11 Cases.

**B.     The Debtors' Annual Premiums**

12.     The Debtors' Insurance Policies generally require payment of the entire premium upfront and at inception.  For the policy period 2014-2015, the total annual premiums under the Insurance Policies (including taxes and fees) was approximately $3,344,366.87 , and the Debtors paid a broker fee of $620,520 to assist in placement thereof.  The coverage types, levels and premiums for these Insurance Policies are neither unusual in amount nor in number in relation to the extent of the business operations conducted by the Debtors, and they are similar to businesses of comparable size and type to those of the Debtors.

13.     As of the Petition Date, the Debtors believe that they were substantially current on amounts owed under the Insurance Policies.  For the avoidance of doubt, however, the Debtors seek authorization to make payments of Insurance Obligations (as defined below)

4

attributable to the prepetition period (plus any unforeseen deductible payment amounts for prepetition claims).

14.     If the Debtors are unable to make any outstanding payments that may be owed on account of the Insurance Policies, the unpaid Insurance Providers may seek relief from the automatic stay to terminate such Insurance Policies.  The Debtors would be required to obtain replacement insurance on an expedited basis and at a significant cost to the estates.  If the Debtors were required to obtain replacement insurance, this payment likely would be greater than what the Debtors currently pay.  Even if these Insurance Providers were not permitted to terminate the agreements, any interruption of payment would have an adverse effect on the Debtors' ability to obtain future policies at reasonable rates.

15.     In light of the importance of maintaining insurance coverage with respect to their business activities, the Debtors believe it is in the best interest of their estates to receive Court approval to honor their obligations under the Insurance Policies and, as necessary, renew or enter into new such agreements.

**C.     Workers' Compensation Insurance**

16.     Under the laws of the various jurisdictions in which they operate, the Debtors are required to maintain policies and programs to provide Employees with workers' compensation benefits.  Failure to maintain workers' compensation insurance could result in administrative or legal proceedings against the Debtors and their officers and directors.  In accordance with this obligation, the Debtors maintain workers' compensation insurance policies in all jurisdictions where they operate.  The Debtors' primary workers' compensation policy is administered by Chubb Indemnity Insurance Company (the "WC Policy").  The WC Policy pays the total of all benefits, damages and expenses resulting from any accident or disease for which the Debtors are legally liable.  There is no deductible under the WC Policy.  The Debtors pay

5

annual premiums to Chubb Indemnity Insurance Company of approximately $251,728 in connection with the WC Policy.  As of the Petition Date, one claim was pending under the WC Policy, for which the Debtors have reserved approximately $1,030.

## RELIEF REQUESTED

17.     By this Motion, the Debtors request entry of an order authorizing, but not directing, the Debtors to (i) maintain existing Insurance Policies and to pay on an uninterrupted basis all premiums, deductibles and administration fees (the "Insurance Obligations") arising thereunder, and (ii) renew, revise, extend, supplement, change or enter into new insurance policies.

18.     The Debtors request that the Court (a) authorize and direct all banks to receive, process, honor and pay any and all checks, drafts, electronic transfers and other forms of payment used by the Debtors to pay the Insurance Obligations, whether presented before, on or after the Petition Date; provided that sufficient funds are on deposit in the applicable accounts to cover such payments; (b) prohibit the Debtors' banks from placing any holds on, or attempting to reverse, any automatic transfers on account of Insurance Obligations; and (c) authorize the Debtors to issue new postpetition checks to replace any checks, drafts and other forms of payment, or effect new postpetition electronic transfers, which may be inadvertently dishonored or rejected and to reimburse any expenses that may be incurred as a result of any bank's failure to honor a prepetition check.

19.     For the reasons set forth herein, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, creditors and other parties in interest, and therefore, should be granted.

## APPLICABLE AUTHORITY

**A.     The Bankruptcy Code, The Necessity of Payment Doctrine And The U.S. Trustee Guidelines Support Payment Of The Insurance Obligations.**

20.     Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  Section 363(b)(1), operating in conjunction with section 105(a) of the Bankruptcy Code and the judicially created "necessity of payment doctrine," support the proposed payments of Insurance Obligations.  The Debtors submit that the use of estate funds for the payment of any Insurance Obligation is a necessary cost of preserving their estates, and is permitted under sections 1107 and 1108 of the Bankruptcy Code, which require the Debtors to honor their fiduciary duties as debtors in possession.  Moreover, the U.S. Trustee Guidelines require maintenance of the Insurance Obligations.

21.     Under the "necessity of payment doctrine" and section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate of the benefit of all creditors.  See, e.g., Miltenberger v. Logansport Ry. Co., 106 U.S. 286, 309 (1882).  The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in Miltenberger.  See In re Lehigh & New England Ry. Co., 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in serious jeopardy."); see also In re Just for Feet, Inc., 242 B.R. 821, 825 (Bankr. D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's

survival during chapter 11."); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994).

**B.      Payment Of The Insurance Obligations Is Authorized Under Bankruptcy Code Sections 1107(a) and 1108.**

22.      Payment of the Insurance Obligations is also authorized under sections 1107 and 1108 of the Bankruptcy Code.  The Debtors, operating their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value."  Id.

23.      Payment of the Insurance Obligations and the renewal, revision, extension, supplementation, change or entering into new insurance policies, as needed in the Debtors' business judgment, are necessary to ensuring the Debtors' ongoing operations.  As noted above, insurance coverage is required by the U.S. Trustee Guidelines.  Moreover, as fiduciaries for the bankruptcy estates, the Debtors could be violating their duties if they in any way jeopardize the coverage provided under the Insurance Policies.

24.      As described above, non-payment of the Insurance Obligations could result in cancellation of the Insurance Policies, in which case the Debtors would not only be in violation of the U.S. Trustee Guidelines, the laws of various states in which the Debtors operate and various contractual agreements, but also may be unable to find alternative insurance coverage and consulting services, or find such alternatives only at a much higher cost than the Debtors currently incur.  Therefore, the potential harm and economic disadvantage that would stem from the cancellation of the Insurance Policies, and failure to renew the Insurance Policies

or revise, extend, supplement, change or enter into new insurance arrangements as needed in

their business judgment, are grossly disproportionate to the amount of the Insurance Obligations,

and the costs to renew, revise, extend, supplement, change or enter into new insurance coverage.

25.    Accordingly, to meet their fiduciary duties as debtors in possession under

sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors must be authorized to pay the

Insurance Obligations and to renew, revise, extend, supplement, change or enter into new

Insurance Policies, as needed in their business judgment.  The Debtors thus seek authority to pay

all Insurance Obligations that may become due with respect to the Insurance Policies if such

payment is necessary in the Debtors' business judgment in order to avoid cancellation or

interruption of insurance coverage.  In addition, the Debtors seek authority to renew, revise,

extend, supplement, change or enter into new Insurance Policies, as needed in their business

judgment.

26.    Courts in this district have routinely granted the same or similar relief as

requested in this Motion to chapter 11 debtors.  See, e.g., In re Savient Pharms., Inc., Case No.

13-12680 (MFW) (Bankr. D. Del. Oct. 16, 2013); In re Exide Techs., Case No. 13-11482 (KJC)

(Bankr. D. Del. June 11, 2013); In re ICL Holding Co., Inc., Case No. 12-13319 (KG) (Bankr. D.

Del. Dec. 13, 2012).[4]

### RESERVATION OF RIGHTS

27.    Nothing contained herein is or should be construed as: (a) an admission as

to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any

claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any

executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or

---

[4]    Because of the voluminous nature of the orders cited herein, they are not attached to this Motion.  Copies of
these orders, however, are available on request.

(e) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume

or reject any executory contract or unexpired lease with any party subject to this Motion.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

28.    Bankruptcy Rule 6003 provides that the relief requested in this Motion

may be granted if the "relief is necessary to avoid immediate and irreparable harm . . . ."  Fed. R.

Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla.

2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on an interim basis

to avoid irreparable harm).  The Third Circuit has interpreted the language "immediate and

irreparable harm" in the context of preliminary injunctions.  In that context, the court has

instructed that irreparable harm is a continuing harm which cannot be adequately redressed by

final relief on the merits and for which money damages cannot provide adequate compensation.

See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh, 235 F. App'x 907, 910 (3d Cir. 2007) (citing

Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be

actual and imminent, not speculative or unsubstantiated.  See, e.g., Acierno v. New Castle

County, 40 F.3d 645, 653-55 (3d Cir. 1994).  The Debtors submit that for the reasons already set

forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable

harm to the Debtors.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

29.    The Debtors also request that the Court waive the stay imposed by

Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of

property other than cash collateral is stayed until the expiration of 14 days after entry of the order,

unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief

that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses

without interruption and to preserve value for their estates.  Accordingly, the Debtors

respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule

6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

30.     Notice of this Motion shall be given to: (i) the U.S. Trustee, (ii) the

indenture trustee for the 2.875% Convertible Senior Notes due 2016, (iii) counsel to the

Unaffiliated Noteholders, (iv) counsel to the Deerfield Noteholders, (v) the parties included on

the Debtors' list of twenty (20) largest unsecured creditors, (vi) the Insurance Carriers and (vii)

all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m). The Debtors submit

that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

31.     No previous request for the relief sought herein has been made to this

Court or any other court.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
November 10, 2014

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Sarah E. Pierce*
Anthony W. Clark (I.D. No. 2051)
Sarah E. Pierce (I.D. No. 4648)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

Kenneth S. Ziman (*pro hac vice admission pending*)
Raquelle L. Kaye (*pro hac vice admission pending*)
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

- and -

Felicia Gerber Perlman (*pro hac vice admission pending*)
155 N. Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

Proposed Counsel for Debtors and Debtors in Possession

902849-NYCSR06A - MSW

## EXHIBIT A

**Schedule of Insurance Policies**

| Policy Type | Policy Number(s) | Effective Date | Expiration Date | Carrier | Premium[1] |
|---|---|---|---|---|---|
| Automobile Liability | 73514329 | 6/27/2014 | 6/27/2015 | Federal Insurance Company | $3,366.00 |
| Cargo - Marine/Air | CRGQ-4817-0614 | 6/27/2014 | 6/27/2015 | Catlin Insurance Co., Inc. | $220,300.00 |
| Cargo - Marine/Air (Excess) | B0823MA1402501 | 6/27/2014 | 6/26/2015 | Lloyd's of London | $150,000.00 |
| Crime | 06-179-11-91 | 6/27/2014 | 6/27/2015 | National Union Fire Insurance Co. of Pittsburgh | $22,135.00 |
| Directors & Officers Liability | 01-297-06-67 | 6/15/2014 | 6/15/2015 | National Union Fire Insurance Co. of Pittsburgh | $665,300.00 |
| Directors & Officers Liability | FD1481232 | 6/15/2014 | 6/15/2015 | Lloyd's - Beazley UK (50%) / Hiscox UK (50%) | $375,300.00 |
| Directors & Officers Liability | ELU134749-14 | 6/15/2014 | 6/15/2015 | XL Specialty Insurance Company | $225,300.00 |
| Directors & Officers Liability | SISIXFL21024514 | 6/15/2014 | 6/15/2015 | Starr Indemnity & Liability Company | $163,300.00 |
| Directors & Officers Liability | FD1481000 | 6/15/2014 | 6/15/2015 | Lloyd's - Beazley UK | $107,800.00 |
| Directors & Officers Liability | FD1481245 | 6/15/2014 | 6/15/2015 | Lloyd's - Beazley UK (50%) / Hiscox UK (50%) | $105,300.00 |
| Directors & Officers Liability | HN-0303-3045-061514 | 6/15/2014 | 6/15/2015 | Hudson Insurance Company | $52,800.00 |
| Directors & Officers Liability | CUG 35959 | 6/15/2014 | 6/15/2015 | Old Republic Insurance Company | $50,300.00 |
| Directors & Officers Liability | 01-303-20-78 | 6/15/2014 | 6/15/2015 | National Union Fire Insurance Co. of Pittsburgh | $75,300.00 |
| Directors & Officers Liability | DOX G24584410 003 | 6/15/2014 | 6/15/2015 | ACE American Insurance Company | $55,300.00 |
| Directors & Officers Liability | CUG 36768 | 6/15/2014 | 6/15/2015 | Old Republic Insurance Company | $52,800.00 |
| Directors & Officers Liability | MLX 7600956 00 | 6/15/2014 | 6/15/2015 | Argonaut Insurance Company | $50,300.00 |

---

[1]    The premium amounts include the broker fee associated therewith.

| Policy Type | Policy Number(s) | Effective Date | Expiration Date | Carrier | Premium[1] |
|---|---|---|---|---|---|
| Directors & Officers Liability | 01-308-57-94 | 6/15/2014 | 6/15/2015 | National Union Fire Insurance Co. of Pittsburgh | $125,300.00 |
| Directors & Officers Liability | DNDN-13040D | 6/15/2014 | 6/15/2015 | ACE Bermuda | $50,300.00 |
| Directors & Officers Liability | 01-308-66-19 | 6/15/2014 | 6/15/2015 | National Union Fire Insurance Co. of Pittsburgh | $100,300.00 |
| Employed Lawyers | 06-283-44-40 | 6/27/2014 | 6/27/2015 | National Union Fire Insurance Co. of Pittsburgh | $8,870.00 |
| Employment Practices Liability | 13404650 | 6/27/2014 | 6/27/2015 | National Union Fire Insurance Co. of Pittsburgh | $65,475.00 |
| Environmental Liability | 37313941 | 11/1/2012 | 11/1/2015 | Federal Insurance Company | $10,339.33[2] |
| Fiduciary | 06-280-15-94 | 6/27/2014 | 6/27/2015 | National Union Fire Insurance Co. of Pittsburgh | $15,853.00 |
| Foreign Liability | 35780942 | 6/27/2014 | 6/27/2015 | Great Northern Insurance Co. | $7,550.00 |
| General Liability | 71706421 | 6/27/2014 | 6/27/2015 | Federal Insurance Company | $27,317.00 |
| Notary Bond | 69696654 | 4/15/2014 | 4/15/2015 | Western Surety Company | $105.00 |
| Products Liability | 74983684 | 6/27/2014 | 6/27/2015 | Federal Insurance Company | $185,406.00 |
| Products Liability Excess | NY13LEX0A471ANC | 6/27/2014 | 6/27/2015 | Navigators Specialty Insurance Company | $102,100.00 |
| Products Liability Excess | EX_12008-1 | 6/27/2014 | 6/27/2015 | Gemini Insurance Company | $81,680.00 |
| Property | SF383 | 6/27/2014 | 6/27/2015 | Affiliated FM Insurance Co. | $516,355.60 |
| Punitive Damages – Employment Practices | 16196154 | 6/27/2014 | 6/27/2015 | Chartis Excess Limited | $13,383.00 |
| Special Crime | 21-566-876 | 6/27/2014 | 6/27/2015 | National Union Fire Insurance Co. of Pittsburgh | $1,215.00 |
| Umbrella Liability | 79825055 | 6/27/2014 | 6/27/2015 | Federal Insurance Company | $26,709.00 |
| Workers Compensation | 71706421 | 6/27/2014 | 6/27/2015 | Chubb Indemnity Insurance Company | $251,728.00 |

---

[2]   The company has paid $31,018 to acquire this insurance.  The $10,339.33 listed here is the annualized premium.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :    Chapter 11
                                              :
DENDREON CORPORATION, et al.,                 :    Case No. 14-12515 (___)
                                              :
                    Debtors.[1]               :    Jointly Administered
                                              :
                                              :    **Related Docket No. ____**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 1107 AND 1108, AND FED. R. BANKR. P. 6003 AND 6004 AUTHORIZING DEBTORS TO (I) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS ARISING THEREUNDER AND (II) RENEW, REVISE, EXTEND, SUPPLEMENT, CHANGE OR ENTER INTO NEW INSURANCE POLICIES**

Upon the motion (the "Motion")[2] of the Debtors for an order (the "Order"), pursuant to Bankruptcy Code sections 105, 361, 362, 363, 364, 1107 and 1108, and Bankruptcy Rules 6003 and 6004, authorizing, but not directing, the Debtors to (i) maintain their existing insurance policies and pay all insurance obligations arising thereunder or in connection therewith, and (ii) renew, revise, extend, supplement, change or enter into new insurance coverage as needed in their business judgment; and upon the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Dendreon Corporation (3193), Dendreon Holdings, LLC (8047), Dendreon Distribution, LLC (8598) and Dendreon Manufacturing, LLC (7123). The address of the Debtors' corporate headquarters is 1301 2nd Avenue, Seattle, Washington 98101.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the First Day Declaration.

interest; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

**ORDERED, ADJUDGED AND DECREED that:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to maintain their Insurance Policies, and to pay the Insurance Obligations arising under or in connection with the Insurance Policies as such Insurance Obligations become due.

3.      Without further order of this Court, the Debtors are authorized, but not directed, to renew, revise, extend, supplement, change or enter into new insurance coverage as needed in their business judgment.

4.      All banks are (a) authorized and directed to receive, process, honor and pay any and all checks, drafts, electronic transfers and other forms of payment used by the Debtors to satisfy their Insurance Obligations, whether presented before, on or after the Petition Date; provided that sufficient funds are on deposit in the applicable accounts to cover such payments, and (b) prohibited from placing any holds on, or attempting to reverse, any automatic transfers on account of Insurance Obligations.  The Debtors are authorized to issue new postpetition checks to replace any checks, drafts and other forms of payment, or effect new postpetition electronic transfers, which may be inadvertently dishonored or rejected and to reimburse any expenses that may be incurred as a result of any bank's failure to honor a prepetition check.

5.      Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to the Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors may have to subsequently dispute such obligation on any ground that applicable law permits.

2

6.      Nothing in the Order or the Motion shall be deemed to constitute assumption or adoption of any agreement under section 365 of the Bankruptcy Code. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

7.      The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

8.      Notwithstanding Bankruptcy Rule 6004(h), the Order shall be effective and enforceable immediately upon entry hereof.

9.      The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

10.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

11.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware

_____, 2014

_____
UNITED STATES BANKRUPTCY JUDGE