IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re: : Chapter 11
:
DENDREON CORPORATION, et al., : Case No. 14-12515 (___)
:
Debtors.[1] : Joint Administration Pending
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER APPROVING THE IMPLEMENTATION
OF THE KEY EMPLOYEE INCENTIVE PLAN**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby move (this "Motion") this Court for entry of an order, under sections 105, 363(b) and, to the extent applicable, 503(c)(3) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing, but not directing, the Debtors to implement the proposed key employee incentive plan. In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration of Robert L. Crotty in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith. In further support of this Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent as follows:[2]

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Dendreon Corporation (3193), Dendreon Holdings, LLC (8047), Dendreon Distribution, LLC (8598) and Dendreon Manufacturing, LLC (7123). The address of the Debtors' corporate headquarters is 1301 2nd Avenue, Seattle, Washington 98101.

[2] In further support of this Motion, the Debtors submit the Declaration of John Dempsey in Support of Debtors' Motion for Order Approving the Implementation of the Key Employee Incentive Plan (the "Dempsey Declaration").

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and the Motion in this district are proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 363(b) and, to the extent applicable, 503(c)(3).

3. Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

**BACKGROUND**

4. On the date hereof (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

5. The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6. To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

7. The Debtors and their non-debtor affiliates are biotechnology companies focused on the discovery, development and commercialization of novel therapies to significantly improve treatment options for cancer patients. The Debtors are primarily focused on commercializing PROVENGE® in the United States and around the world. PROVENGE is a

2

first-in-class immunotherapy used to treat patients suffering from advanced-stage prostate cancer, which is the most common non-skin cancer and the second-leading cause of cancer deaths among men in the United States.

8. Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, their capital raising and restructuring activities and the events leading to the Debtors' decision to file the Chapter 11 Cases, is set forth in detail in the First Day Declaration.[3]

## RELIEF REQUESTED

9. By this Motion, the Debtors seek entry of an order under Bankruptcy Code sections 105, 363(b) and, to the extent applicable, section 503(c)(3): (i) authorizing the Debtors to implement the proposed plan for payments to certain key executives designed to incentivize such employees to maximize recoveries to creditors through the sale process—the proposed Key Employee Incentive Plan (as described herein, the "KEIP") and (ii) allowing all payments thereunder as administrative expenses of these estates.

## THE KEY EMPLOYEE INCENTIVE PLAN

**A. KEIP Design**

10. Prior to the Petition Date, the Debtors recognized a need to address the concerns of their employees and their creditors and to align the interests of these respective constituencies. With these objectives in mind, the Debtors, after extensive consultation with, and benchmarking analysis by, their employee benefits consultant, Mercer (US) Inc. ("Mercer"), developed the KEIP to properly incentivize certain key employees identified by the Debtors.

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

11. The KEIP is designed to provide incentives to nine (9) eligible executives (the "<u>Participants</u>")[4] to pursue a timely and successful reorganization or sale. The KEIP provides for variable payouts to the Participants based upon the sale price received from the ongoing sale process. Eligible executives shall receive payouts only upon the occurrence of a sale or recapitalization of the Debtors' business resulting in a change of control in which the total value received for the Debtors' assets (the "<u>Total Value</u>") is more than $325 million (a "<u>Payment Event</u>").

12. At the "Minimum Threshold" of $325 million, the Participants will not receive a KEIP payment even if a transaction closes. The "Maximum Threshold" is satisfied if the Debtors obtain a Total Value of $620 million, which reflects the amount necessary to pay off the Debtors' debt. At a Total Value between $325 million and $620 million, the amounts to be paid are determined on a straight-line basis as demonstrated in <u>Exhibit A</u> attached hereto. A Total Value above the Maximum Threshold will not result in additional payments to the Participants. The maximum aggregate payments under the KEIP would be $3.1 million. The payments, if any, would be due on the date that is thirty (30) days after the Payment Event (the "<u>Bonus Payment Date</u>").

13. In the event that a Participant is terminated by the Debtors without cause or for reasons of death or disability, such Participant will be entitled to payment of a pro-rata portion of such Participant's award based on the number of days the Participant was employed after the Petition Date through the date of termination, divided by the number of days from the Petition Date through the date of the Payment Event. If a Participant voluntarily terminates his or

---

[4] It should be noted that the CEO is not a participant in the KEIP.

her employment or if the Participant's employment with the Debtors is terminated for cause prior to the Bonus Payment Date, he or she will forfeit any right to a payment under the KEIP.

        14.     It is important to note that the KEIP is not a "pay to stay" retention plan. Absent achievement of a Total Value above $325 million, Participants will not be eligible for a KEIP payment, even if a transaction closes and the Participants have stayed with the Debtors through the closing. Accordingly, the KEIP successfully aligns the interests of the Debtors, their employees, and their creditors and is a true incentive plan.

**B.**     **Payouts are Market-Based**

        15.     In assessing the design of the KEIP, the Debtors, with Mercer's assistance, sought to ensure that the resulting compensation levels for Participants would be appropriate based on market comparisons (considering the Debtors' industry and market for talent) as well as ensure that the KEIP design is in line with typical chapter 11 practice. To guide the design of the KEIP and assess the design to market practice, Mercer conducted a comprehensive review of incentive-based programs implemented in other chapter 11 cases. Mercer examined a population of 28 companies that filed for bankruptcy protection since January 1, 2009, underwent a sale of their assets, and that implemented key employee incentive plans linked to the results of the sale process while in bankruptcy. The proposed KEIP was compared to the results of this market analysis based on: KEIP eligibility, total cost, metrics, and payout timing. Specifically, Mercer found that the proposed KEIP falls slightly above the market median with respect to the absolute number of participants, and is in the 75th percentile as a percentage of prepetition employees. The proposed maximum cost of the KEIP is below the market median for companies of a similar size. As a percentage of sale proceeds at the Maximum Threshold of $620 million, the Debtors' proposed KEIP is below the 25th percentile. The payout timing for the KEIP is also consistent

with market practice. The metrics used in the proposed KEIP are consistent with majority practice among the comparator companies.

16. Additionally, Mercer analyzed the compensation opportunities of the Debtors' top executives with opportunities at similarly-sized companies in the same industry. Without any bankruptcy compensation plans, Mercer concluded that the total compensation of the Participants was 56% below the market median. Even when the maximum amount of the KEIP is included in total compensation, the compensation package remains 10% below the market median.

**C.    The Debtors' Need for the KEIP**

17. Without the expertise of the senior management team to efficiently and effectively operate the Debtors' business and the proper incentives to induce them to commit the additional time necessary to successfully navigate the Debtors through the Chapter 11 Cases, the Debtors' ability to achieve a successful sale will be greatly hampered. The success of the Debtors' restructuring and sale efforts is dependent upon the goodwill and support of their employees. As the Debtors implement the sale process, it is imperative that the Debtors' key personnel are appropriately incentivized to maximize the financial performance of the Debtors' operations and, as such, the price of any sale transaction to ensure optimum recovery for all stakeholders. Moreover, the Participants have been, and will continue to be, called upon to expend significantly more hours during the chapter 11 and sale process than contemplated by the normal terms of their employment.

18. In order to effectively and efficiently accomplish an orderly sale process that maximizes recovery for all stakeholders, the Debtors determined that formulating the KEIP was in the best interest of their estates and all parties in interest. The KEIP will help ensure that

key executives who are essential to the chapter 11 and sale process are properly motivated to maximize value for the Debtors, their estates, their creditors and other parties in interest.

## APPLICABLE AUTHORITY

19. The Debtors seek authority pursuant to Bankruptcy Code section 363 to implement and honor obligations to the Participants under the KEIP. The Debtors respectfully submit that the KEIP will provide the necessary incentives to the Participants to drive an expeditious chapter 11 process and maximize value for the Debtors' estates.

**A.  Authorization of the KEIP is Appropriate Pursuant to Bankruptcy Code Section 363(b)(1)**

20. Bankruptcy Code section 363(b) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under Bankruptcy Code section 363, this Court may approve a debtor's request for relief when the debtor demonstrates a sound business justification for seeking such relief. See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147-49 (3d Cir. 1986) (implicitly adopting the "sound business judgment test" of Lionel); Dai-Ichi Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions").

21. As set forth above, the Debtors have articulated valid business reasons for implementation of the KEIP. The Debtors have determined in their reasonable business judgment that implementation of the KEIP is in the best interests of the Debtors' estates and the stakeholders in the Chapter 11 Cases. In addition to their normal day-to-day responsibilities managing the Debtors' business and maintaining relationships with their employees, key

customers, and key suppliers, the Participants serve as the driving force to bring the Chapter 11 Cases to their ultimate resolution. The Participants are being asked to take on considerable additional responsibilities, yet, as a result of the chapter 11 filing, the Participants are not currently offered incentive opportunities to compensate them for their enhanced responsibilities, as would be consistent with market practice and the Debtors' past practice.

22. Additionally, as set forth above and more fully in the Dempsey Declaration, payment levels under the KEIP are reasonable and were determined based on a thorough analysis of benchmarks performed by Mercer. Moreover, the overall cost of the KEIP is reasonable in light of the size of the Debtors' estates and the benefit from a successful sale process. Accordingly, the Debtors believe that valid business reasons exist for the implementation of the KEIP and, thus, that its implementation should be approved.

23. Once a debtor articulates a valid business justification for a particular form of relief, the Court reviews the debtor's request under the "business judgment rule." The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). "The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" See id.

24. In that regard, courts have found that a debtor's use of reasonable performance bonuses and other incentives for employees is a valid exercise of a debtor's business judgment. See, e.g., In re Am. W. Airlines, Inc., 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (noting that it is the proper use of a debtor's business judgment to propose bonuses for employees

8

who helped propel the debtor successfully through the bankruptcy process); In re Interco Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo 1991) (stating that a debtor's business judgment was controlling in the approval of a "performance/retention program").

25.     This and other courts have approved similar employee incentive programs as valid exercises of business judgment. See, e.g., In re Synagro Techs., Inc., No. 13-11041(BLS) (Bankr. D. Del. May 13, 2013) (approving key employee incentive plan with payments based on achieving certain valuation thresholds); In re Mervyn's Holdings, LLC, No. 08-11586 (KG) (Bankr. D. Del. Oct. 30, 2009) (approving task and target-based incentive plan for certain members of debtor's management); In re Midway Games Inc., No. 09-10465 (KG) (Bankr. D. Del. Apr. 23,2009) (approving key employee incentive plan with payments tied to achievement of certain events tied to debtors' business plan); In re KB Toys, Inc., No. 08-13269 (KJC) (Bankr. D. Del. Jan. 14, 2009) (approving incentive plan based on successfully completing identifiable "tasks" consistent with targets, which plan applied to certain members of debtor's management); In re Linens Holding Co., No. 08-10832 (CSS) (Bankr. D. Del. Oct. 21, 2008) (approving wind-down incentive plan for certain members of debtor's management); In re Buffets Holdings. Inc., No. 08-10141 (MFW) (Bankr. D. Del, Apr. 28, 2008) (authorizing sale-related incentive pay to President and COO pursuant to Bankruptcy Code sections 105(a), 363(b)(1), and 503(c)(3)); In re Dura Auto. Sys., Inc., No. 06-11202 (KJC) (Bankr. D. Del. June 28, 2007) (approving key employee incentive plan payable, in part, upon submission of business plan, filing plan of reorganization and disclosure statement, and confirmation of chapter 11 plan); In re Werner Holding Co. (DE). Inc., No. 06-10578 (KJC) (Bankr. D. Del. Dec. 27, 2006) (approving key employee incentive plan providing for cash payments as rewards for attaining operational restructuring goals and personal performance goals in support); In re Global Home

Prods. LLC, No. 06-10340 (KG) (Bankr. D. Del. May 30, 2006) (authorizing payment of incentive bonus to certain management employees upon closing of going-concern sale); In re Pliant Corp., No. 06-10001 (MFW) (Bankr. D. Del. Mar. 14, 2006) (approving management incentive compensation plan providing for cash awards for achievement of organizational performance goals).

26. In the present case, authorizing the Debtors to provide the KEIP to the Participants will accomplish a similarly sound business purpose. The Debtors have determined that the costs associated with additional postpetition compensation payments pursuant to the KEIP are more than justified by the benefits that the Debtors will realize (and have already realized) by creating appropriate incentives for the Participants, whose experience, skills and diligent efforts are critical for the Debtors to maximize the value of their business as they reorganize—and by the inevitable expense and disruption to the chapter 11 process if Participants were to terminate their employment, thereby necessitating replacement costs of more expensive professional services.

**B.    The Key Employee Incentive Plan is Incentivizing and Thus Not Governed by Bankruptcy Code Sections 503(c)(1) and 503(c)(2)**

27. Bankruptcy Code Section 503(c) governs retention, severance and other payments to insiders. By its plain language, section 503(c)(1) of the Bankruptcy Code pertains solely to retention payments to insiders, and section 503(c)(2) of the Bankruptcy Code pertains solely to severance payments to insiders. Neither of these sections apply to performance-based incentive plans such as the KEIP, which only allots payments based on the successful achievement of certain Payment Events and does not provide benefits to Participants upon termination of their employment with the Debtors. See, e.g., In re Nobex Corp., No. 05-20050 (CSS) (Bankr. D. Del. Jan. 12, 2006), Hr'g Tr. At 67 (section 503(c)(1) of the Bankruptcy Code

10

does not apply to incentive programs); In re Warner Holding Co., Inc., Case No. 06-10578 (KJC) (Bankr. D. Del. July 20, 2006; Aug. 22, 2006 and Dec. 20, 2006) (ordering various relief requested in connection with debtors' incentive bonus plans pursuant to sections 363(b) and 503(c) of the Bankruptcy Code); In re Dana Corp., 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006) (applying section 503(c)(3) of the Bankruptcy Code to evaluate management incentive plan in absence of applicability of sections 503(c)(1) or 501(c)(2) of the Bankruptcy Code); In re Calpine Corp., No 05-60200 (Bankr. S.D.N.Y. Apr. 26, 2006), Hr'g Tr. At 84-85 (sections 503(c)(1) and 503(c)(2) of the Bankruptcy Code do not apply to incentive programs).

28. The KEIP is not intended to provide bonuses for retention. In particular, the KEIP comprises only targeted incentive payments to the Debtors' employees who are the most critical to maximizing the value of the Debtors' business as aligned with the sale process. Although certain Participants are "insiders" within the meaning of the Bankruptcy Code, the KEIP has been crafted with great care to ensure the metrics directly incentivize and motivate participants to meet the objectives set forth therein.

29. Moreover, while the KEIP was not crafted with the goal of retaining the Participants, the fact that the KEIP may encourage the Participants to remain with the Debtors throughout the Chapter 11 Cases should not bar implementation of the KEIP. Indeed, all successful incentive programs have the indirect benefit of incentivizing an employee to remain with the company. See In re Global Home Prods., LLC, 369 B.R. 778, 786 (Bankr. D. Del. 2007). The primary purpose of the KEIP is to maximize value for the benefit of the Debtors' estates.

30. Accordingly, the Debtors respectfully submit that sections 503(c)(1) and 503(c)(2) of the Bankruptcy Code do not apply to the KEIP.

C.  **The KEIP is Justified by the Facts and Circumstances and Satisfies Bankruptcy Code Section 503(c)(3)**

31.  The KEIP also satisfies the standard set forth in Bankruptcy Code section 503(c)(3), which provides:

> [There shall neither be allowed, nor paid--] (3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3).

32.  Courts have held that the requirement that transfers or obligations be "justified by the facts and circumstances of the case" is a reiteration of the business judgment test (or sound business judgment test) incorporated into Bankruptcy Code section 363(b) (and as set forth above) and under which courts traditionally evaluated executive compensation programs prior to recent amendments to the Bankruptcy Code. See In re Dana Corp., 358 B.R. at 576; In re Dura Automotive Systems, Inc., No. 06-11202 (KJC) (Bankr. D. Del. Oct. 30, 2006); In re Nobex Corp., No. 05-20050 (Walrath, J.) (Bankr. Del. Jan. 12, 2006) ("So I do read (c)(3) to be the catch-all and the standard under (c)(3) for any transfers or obligations made outside the ordinary course of business are those that are justified by the facts and circumstances of the case. Nothing more – no further guidance being provided to the Court by Congress, I find it quite frankly nothing more than a reiteration of the standard under 363 . . . under which courts had previously authorized transfers outside the ordinary course of business and that is, based on the business judgment [sic] of the debtor, the court always considered the facts and circumstances of the case to determine whether it was justified."); 4 Collier on Bankruptcy ¶ 503.17[3] (15th rev. ed. 2006) (indicating that the standard for approval under Bankruptcy Code section 503(c)(3) is

12

"unlikely to be much different than the standard for approval that would otherwise be applied by the court").

33. In assessing a debtor's business judgment regarding the implementation of incentive programs, courts, including this one, have looked to the factors laid out by Judge Lifland in <u>Dana</u> for guidance to evaluate a proposed incentive program under Bankruptcy Code section 503(c)(3).[5] <u>First</u>, in consultation with Mercer, after an extensive analysis of the programs implemented in other chapter 11 cases, the Debtors designed and refined the KEIP to motivate and reward Participants for their significant efforts and the increased demands placed upon them in connection with the chapter 11 process. Specifically, the KEIP will motivate the Participants to achieve the Maximum Threshold, thereby maximizing value for the Debtors' estates. <u>Second</u>, Mercer engaged in an extensive benchmarking analysis in assisting the Debtors with the design of the KEIP. The cost of the KEIP is below the market median based on the proposed maximum cost of the KEIP. The cost is reasonable and well-justified given the size of the Debtors' business and the value that achievement of the valuation targets would bring to the estate. <u>Third</u>, the scope of the KEIP is fair and reasonable. <u>Fourth</u>, the KEIP is consistent with industry standards with respect to eligibility, total cost, metrics, and payout timing. <u>Finally</u>, consistent with past practice, the Debtors closely consulted with the Board of Directors in formulating the KEIP and received outside independent market advice from Mercer to ensure the plan meets the Debtors' goals of incentivizing its senior management.

---

[5] The <u>Dana</u> factors are: (a) whether a reasonable relationship existed between the proposed plan and the desired results; (b) whether the cost of the plan was reasonable in light of the overall facts of the case; (c) whether the scope of the plan was fair and reasonable; (d) whether the plan was consistent with industry standards; (e) whether the debtor had put forth sufficient due diligence efforts in formulating the plan; and (f) whether the debtor received sufficient independent counsel in performing any due diligence and formulating the plan. <u>In re Dana Corp.</u>, 358 B.R. at 576-77.

34. Accordingly, the Debtors respectfully submit that the KEIP is in the best interests of the Debtors, their creditors, and all parties-in-interest in the Chapter 11 Cases.

## RESERVATION OF RIGHTS

35. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract with any party subject to this Motion.

## NOTICE

36. Notice of this Motion shall be given to: (i) the U.S. Trustee, (ii) the indenture trustee for the 2.875% Convertible Senior Notes due 2016, (iii) counsel to the Unaffiliated Noteholders, (iv) counsel to the Deerfield Noteholders, (v) the parties included on the Debtors' list of twenty (20) largest unsecured creditors and (vi) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

37. No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
       November 10, 2014

                                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                      */s/ Sarah E. Pierce*
                                      Anthony W. Clark (I.D. No. 2051)
                                      Sarah E. Pierce (I.D. No. 4648)
                                      One Rodney Square
                                      P.O. Box 636
                                      Wilmington, Delaware 19899-0636
                                      Telephone: (302) 651-3000
                                      Fax: (302) 651-3001

                                      - and -

                                      Kenneth S. Ziman (*pro hac vice admission pending*)
                                      Raquelle L. Kaye *(pro hac vice admission pending)*
                                      Four Times Square
                                      New York, New York 10036-6522
                                      Telephone: (212) 735-3000
                                      Fax: (212) 735-2000

                                      - and -

                                      Felicia Gerber Perlman (*pro hac vice admission pending*)
                                      155 N. Wacker Drive
                                      Chicago, Illinois 60606-1720
                                      Telephone: (312) 407-0700
                                      Fax: (312) 407-0411

                                      Proposed Counsel for Debtors and Debtors in Possession

# **EXHIBIT A**

## **Payout Curve**



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| DENDREON CORPORATION, et al., | : | Case No. 14-12515 (___) |
| Debtors.[1] | : | Joint Administration Pending |
| | : | **Related Docket No.** |

## ORDER APPROVING IMPLEMENTATION OF THE KEY EMPLOYEE INCENTIVE

Upon the motion (the "<u>Motion</u>")[2] of the Debtors for an order (this "<u>Order</u>") under Bankruptcy Code sections 105(a), 363(b) and 503(c)(3) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") authorizing, but not directing, the implementation of the Debtors' proposed key employee incentive plant; and upon the First Day Declaration; and upon the Dempsey Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

**ORDERED, ADJUDGED AND DECREED that:**

1. The Motion is GRANTED.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Dendreon Corporation (3193), Dendreon Holdings, LLC (8047), Dendreon Distribution, LLC (8598) and Dendreon Manufacturing, LLC (7123). The address of the Debtors' corporate headquarters is 1301 2nd Avenue, Seattle, Washington 98101.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2. Implementation of the key employee incentive plan (as described in the Motion, the "KEIP") is based on the Debtors' sound business judgment and is justified by the facts and circumstances of the Debtors' Chapter 11 Cases.

3. Pursuant to Bankruptcy Code sections 105(a), 363(b) and 503(c)(3), the Debtors are authorized to take all necessary actions to implement the KEIP and to make all payments pursuant thereto.

4. The claims of the Participants under the KEIP are entitled to and shall be accorded administrative expense status and priority under Bankruptcy Code sections 503(b)(1)(A) and 507(a)(2).

5. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: Wilmington, Delaware
_____, 2014

_____
UNITED STATES BANKRUPTCY JUDGE

2