IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
In re:                                                        :    Chapter 11
                                                              :
DENDREON CORPORATION, et al.,                                 :    Case No. 14-12515 (LSS)
                                                              :
                        Debtors.[1]                           :    Jointly Administered
                                                              :
                                                              :    **Obj. Due: March 16, 2015, at 4:00 p.m. (Eastern)**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SECOND MONTHLY FEE APPLICATION OF
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD OF
JANUARY 1, 2015 THROUGH AND INCLUDING JANUARY 31, 2015**

| | |
|---|---|
| Name of Applicant: | Skadden, Arps, Slate, Meagher & Flom LLP |
| Authorized to Provide Professional Services to: | Dendreon Corporation, et al. |
| Date of Retention: | December 9, 2014 *nunc pro tunc* to November 10, 2014 |
| Period for which compensation and reimbursement is sought: | January 1, 2015 through and including January 31, 2015 |
| Amount of Compensation sought as actual, reasonable and necessary: | $1,459,396.00 (80% of which is $1,167,516.80) |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $2,028.21 |

This is a/an: _x_ monthly __ interim __ final application.

This application does not request compensation at this time for services rendered in preparing this application. The Applicant intends to seek such compensation at a later date.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Dendreon Corporation (3193), Dendreon Holdings, LLC (8047), Dendreon Distribution, LLC (8598) and Dendreon Manufacturing, LLC (7123). The address of the Debtors' corporate headquarters is 1301 2nd Avenue, Seattle, Washington 98101.

If this is not the first application filed, disclose the following for each prior application:

| | | Requested | | Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| 01/30/15 | 11/10/14–12/31/14 | $1,455,969.00 (80% of $1,819,961.25) | $12,037.03 | $1,455,969.00 | $11,923.71* |

* Reflecting a voluntary reduction of $113.32.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**SUMMARY OF SECOND MONTHLY APPLICATION**
**COMPENSATION BY PROFESSIONAL PERSON**
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**JANUARY 1, 2015 THROUGH AND INCLUDING JANUARY 31, 2015**

| Timekeeper | Year of Admission | Hourly Rate | Total Hours | Total Compensation |
|---|---|---|---|---|
| **Partner** | | | | |
| Cliff Gross | 1989 | $1,350.00 | 12.80 | $17,280.00 |
| Felicia Gerber Perlman | 1992 | $1,220.00 | 126.20 | $153,964.00 |
| Graham Robinson | 2000 | $1,220.00 | 113.50 | $138,470.00 |
| Kenneth Ziman | 1992 | $1,220.00 | 56.90 | $69,418.00 |
| Matthew B. Zisk | 1998 | $1,220.00 | 5.10 | $6,222.00 |
| | **Total Partner** | | **314.50** | **$385,354.00** |
| **Counsel** | | | | |
| Laura P. Knoll | 2006 | $885.00 | 114.30 | $101,155.50 |
| Ronald D. Kohut | 2004 | $935.00 | 11.40 | $10,659.00 |
| Elizabeth A. Malone | 2003 | $995.00 | 5.90 | $5,870.50 |
| Sarah E. Pierce | 2005 | $935.00 | 80.00 | $74,800.00 |
| Paul Schockett | 2006 | $885.00 | 29.80 | $26,373.00 |
| | **Total Counsel** | | **241.40** | **$218,858.00** |
| **Associate** | | | | |
| Matthew J. Donnelly | 2009 | $810.00 | 26.70 | $21,627.00 |
| Liz Downing | 2013 | $640.00* | 156.00 | $99,168.00 |
| Jennifer Kamocsay | 2011 | $775.00 | 152.60 | $118,265.00 |
| Raquelle Kaye | 2006 | $870.00 | 241.80 | $210,366.00 |
| Karim J. Kentfield | 2012 | $640.00 | 11.30 | $7,232.00 |
| Candice Korkis | 2009 | $810.00 | 160.80 | $130,248.00 |
| Jason H. Kupper | 2007 | $870.00 | 11.70 | $10,179.00 |
| Edward Mahaney-Walter | 2014 | $640.00 | 125.20 | $80,128.00 |
| Alejandro G. Ortega | Not yet admitted** | $380.00 | 144.40 | $54,872.00 |
| Young M. Park | 2010 | $870.00 | 37.00 | $32,190.00 |
| Kevin P. Scura | 2013 | $450.00 | 88.60 | $39,870.00 |
| Mark Steinman | 2006 | $870.00 | 16.20 | $14,094.00 |
| Anne Villanueva | 2013 | $640.00 | 14.80 | $9,472.00 |
| | **Total Associate** | | **1,187.10** | **$827,711.00** |
| **Paraprofessional** | | | | |
| Lois Ahn | N/A | $200.00 | 7.60 | $1,520.00 |
| Christopher M. Heaney | N/A | $350.00 | 28.30 | $9,905.00 |

| Timekeeper | Year of Admission | Hourly Rate | Total Hours | Total Compensation |
|---|---|---|---|---|
| Wendy K. LaManna | N/A | $350.00 | 5.40 | $1,890.00 |
| Nicolle Perry | N/A | $280.00 | 26.60 | $7,448.00 |
| Iliana Swick | N/A | $280.00 | 9.50 | $2,660.00 |
| Shelley E. Dague | N/A | $300.00 | 5.40 | $1,620.00 |
| Rachel M. Namaan | N/A | $300.00 | 8.10 | $2,430.00 |
| | **Total Paraprofessional** | | **90.90** | **$27,473.00** |
| **Grand Total*** | | | **1,833.90** | **$1,459,396.00** |
| **Blended Rate:** | | | | **$795.79** |
| **Blended Rate Excluding Paraprofessionals:** | | | | **$821.53** |

\* Nonworking travel time is billed at 50% of the applicable regular billing rate.

\*\* Law clerks are law school graduates who are not presently admitted to practice.

\*\*\* Includes a voluntary accommodation of $72,628.50.

**SUMMARY OF SECOND MONTHLY APPLICATION
COMPENSATION BY PROJECT CATEGORY
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
JANUARY 1, 2015 THROUGH AND INCLUDING JANUARY 31, 2015**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Asset Dispositions | 755.40 | $670,657.00 |
| Reorganization Plan / Plan Sponsors | 136.20 | $111,995.00 |
| Reports and Schedules | 155.80 | $106,500.50 |
| Disclosure Statement / Voting Issues | 161.80 | $91,050.00 |
| Tax Matters | 89.60 | $82,424.00 |
| Executory Contracts | 100.50 | $75,253.00 |
| Retention / Fee Matters (SASM&F) | 102.90 | $61,155.50 |
| Creditor Meetings / Statutory Committees | 52.30 | $50,060.50 |
| Claims Admin. | 43.10 | $31,653.50 |
| Case Administration | 48.40 | $30,527.50 |
| Employee Matters | 33.10 | $27,421.00 |
| General Corporate Advice | 23.60 | $27,388.00 |
| Regulatory and SEC Matters | 40.80 | $25,968.50 |
| Retention / Fee Matters / Objections (Other) | 37.10 | $24,925.00 |
| Vendor Matters | 28.00 | $22,714.00 |
| Litigation | 9.20 | $6,965.00 |
| Leases | 7.90 | $6,906.00 |
| U.S. Trustee Matters | 6.10 | $5,160.00 |
| Nonworking Travel Time* | 2.10 | $672.00 |
| **TOTAL** | **1,833.90** | **$1,459,396.00** |

* Nonworking travel time is billed at 50% of the applicable regular billing rate.

**SUMMARY OF SECOND MONTHLY APPLICATION**
**EXPENSE SUMMARY**
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**JANUARY 1, 2015 THROUGH AND INCLUDING JANUARY 31, 2015**

| Expense Category | Total Expenses |
|---|---|
| Computer Legal Research* | $216.59 |
| In-House Reproduction** | $114.60 |
| Courier/Express/Postage | $55.28 |
| Telecommunications | $580.24 |
| Business Travel & Lodging | $1,061.50 |
| **TOTAL** | **$2,028.21** |

* Computer-assisted legal research charges are billed at actual cost.
** The requested rate for copying charges is $0.10 per page.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :    Chapter 11
                                        :
DENDREON CORPORATION, et al.,           :    Case No. 14-12515 (LSS)
                                        :
                    Debtors.[1]         :    Jointly Administered
                                        :
                                        :    **Obj. Due: March 16, 2015, at 4:00 p.m. (Eastern)**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SECOND MONTHLY FEE APPLICATION OF
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD OF
JANUARY 1, 2015 THROUGH AND INCLUDING JANUARY 31, 2015**

Skadden, Arps, Slate, Meagher & Flom LLP and affiliates (collectively,

"Skadden" or the "Firm"), counsel to the debtors and debtors in possession in the above-

captioned cases (collectively, the "Debtors"), submit this application (this "Application"),

seeking compensation for services rendered and reimbursement of expenses incurred as counsel

to the Debtors, for the period from January 1, 2015 through and including January 31, 2015 (the

"Application Period"), under sections 330 and 331 of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Order Pursuant

to 11 U.S.C. §§ 105(a) and 331 Establishing Interim Compensation Procedures, dated December

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Dendreon
       Corporation (3193), Dendreon Holdings, LLC (8047), Dendreon Distribution, LLC (8598) and Dendreon
       Manufacturing, LLC (7123). The address of the Debtors' corporate headquarters is 1301 2nd Avenue, Seattle,
       Washington 98101.

9, 2014 (Docket No. 153) (the "ICP Order"), and the exhibit attached thereto (together with the ICP Order, the "Interim Compensation Procedures").[2] Skadden represents as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Rule 2016-2.

3.      The Debtors consent to this Court's authority to enter final orders on this matter.

## BACKGROUND

4.      On November 10, 2014 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The factual background regarding the Debtors, including their business operations, their corporate and capital structure, their capital raising and restructuring activities, and the events leading to the Debtors' decision to file the Chapter 11 Cases, is set forth in the Declaration of Robert L. Crotty in Support of Chapter 11 Petitions and First Day Pleadings (Docket No. 3).

5.      The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.      On November 19, 2014, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in the

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Interim Compensation Procedures.

Chapter 11 Cases pursuant to Bankruptcy Code section 1102. No trustee has been appointed in the Chapter 11 Cases.

## RETENTION OF SKADDEN

7.        On November 12, 2014, the Debtors applied to the Court for an order authorizing them to retain Skadden pursuant to an amended and restated engagement letter dated as of October 21, 2014 (the "Engagement Letter"), as their restructuring counsel, effective *nunc pro tunc* to the Petition Date (Docket No. 72). On December 9, 2014, the Court entered an order (Docket No. 152) (the "Retention Order") authorizing the Debtors to employ Skadden as their counsel, effective as of the Petition Date, in accordance with the provisions of the Retention Order and the Engagement Letter.

## INTERIM COMPENSATION ORDER

8.        On December 9, 2014, the Court entered the Interim Compensation Procedures, which set forth the procedures for interim compensation and reimbursement of expenses for all professionals in the Chapter 11 Cases.

9.        In particular, the Interim Compensation Procedures provide that a Professional will serve a Monthly Fee Application on or after the twentieth (20th) day of each month following the month for which compensation is sought. Provided that there are no objections to the Monthly Fee Application filed within twenty (20) days after the service of a Monthly Fee Application, the Professional may file with the Court a certificate of no objection or a certificate of partial objection, whichever is applicable, after which the Debtors are authorized to pay that Professional an amount equal to 80% of the fees and 100% of the expenses requested in the Monthly Fee Application. If an objection to the Monthly Fee Application is filed by a

Notice Party, then the Debtors are authorized to pay 80% of the fees and 100% of the expenses not subject to an objection.

## RELIEF REQUESTED

10.     Skadden is seeking compensation equal to eighty percent (80%) of the $1,459,396.00 in fees for professional services rendered by Skadden professionals during the Application Period, for a total of $1,167,516.80. This amount is derived solely from the applicable hourly billing rates of the Firm's personnel who rendered such services to the Debtors. A summary of charges is attached hereto as Exhibit A, and a time detail is attached hereto as Exhibit B.

11.     Skadden also requests reimbursement of 100% of its actual and necessary out-of-pocket disbursements and charges incurred during the Application Period. An expense detail is attached hereto as Exhibit C.

12.     The fees and disbursements sought in this Application reflect total client accommodations of $72,628.50, a reduction of 4.7%. In the event that any objections to this Application are filed, Skadden reserves the right to seek payment for all or any part of these client accommodations.

13.     Skadden has attempted to include in this Application all time and expenses relating to the Application Period. However, delays in the processing of time entries and in the receipt of expense invoices do occur. Accordingly, Skadden reserves the right to supplement this Application. This Application is also made without prejudice to Skadden's right to seek a final allowance of compensation in the future.

14.     Skadden has received no promise of payment for professional services rendered or to be rendered in the Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code.

## SUMMARY OF SERVICES RENDERED

15.     During the Application Period, Skadden professionals worked closely with the Debtors and the Debtors' other professionals to satisfy the Debtors' objectives, including (i) the preservation of the Debtors' business, (ii) preparation for the potential sale of all or substantially all of the Debtors' assets (the "Sale"), or, in the alternative, the restructuring and recapitalization of the Debtors, and (iii) maximization of value. The services described herein have been directed towards those tasks necessary to fulfill the Debtors' fiduciary and statutory duties and to achieve the Debtors' objectives. To meet the Debtors' needs, Skadden professionals provided multi-disciplinary services on a daily basis, working nights, weekends, and holidays as necessary to research, draft, analyze, negotiate, and resolve numerous issues. Throughout this process, certain of the principal Skadden professionals working on the Chapter 11 Cases were required to devote the vast majority of their time to this engagement, often to the exclusion of other clients. Indeed, Skadden's efforts on behalf of the Debtors have assisted the Debtors in obtaining the prompt and consensual resolution of the vast majority of issues that arose during the Application Period.

16.     At the commencement of the Chapter 11 Cases, Skadden created 39 different matter numbers or subject-matter categories to which its professionals billed their time, all of which are related to the tasks performed by Skadden on behalf of the Debtors.[3] Skadden kept a contemporaneous record of the time spent rendering services, and separated tasks in

---

[3]     These matters are listed in the Compensation by Project Category table above.

billing increments of one-tenth of an hour. All of the services performed by Skadden have been legal in nature and necessary and appropriate for the effective administration of the Chapter 11 Cases.

17.     Attorneys, legal assistants, and other professionals of Skadden have expended a total of 1,833.90 hours in connection with this case during the Application Period.

18.     Skadden devoted approximately 57.1% of its time to the following matters, fees for each of which were greater than $100,000: (i) Asset Dispositions, (ii) Reorganization Plan / Plan Sponsors, and (iii) Reports and Schedules.

19.     Skadden devoted approximately 41.5% of its time to the following matters, fees for each of which were between $10,000 and $100,000: (i) Disclosure Statement / Voting Issues, (ii) Tax Matters, (iii) Executory Contracts, (iv) Retention / Fee Matters (SASM&F), (v) Creditor Meetings / Statutory Committees, (vi) Claims Admin., (vii) Case Administration, (viii) Employee Matters, (ix) General Corporate Advice, (x) Regulatory and SEC Matters, (xi) Retention / Fee Matters / Objections (Other), and (xii) Vendor Matters.

20.     Skadden devoted the remaining approximately 1.4% of its time to the following matters, fees for each of which were less than $10,000: (i) Litigation, (ii) Leases, (iii) U.S. Trustee Matters, and (iv) Nonworking Travel Time.

**MATTERS OVER $100,000**

21.     During the Application Period, Skadden professionals devoted significant time to various key matters, each of which had a time value of more than $100,000. These matters were as follows:

A.    **Asset Dispositions (General)**
      **Amount Sought: $670,657.00**

22.    During the Application Period, Skadden professionals assisted the Debtors

in pursuing the process of, and negotiating the terms of, the sale of substantially all of the assets

of the Debtors. This service was vital in maximizing value for all parties in interest. Prior to the

Petition Date, the Debtors signed plan support agreements contemplating qualified bids for all or

substantially all of the Debtors' non-cash assets in excess of $275 million. On January 29, 2015,

the Debtors filed an emergency motion for an order (a) approving Valeant Pharmaceuticals

International, Inc. ("Valeant"), as the stalking horse bidder for the Sale and authorizing bid

protections in connection with the Sale and (b) rescheduling the hearing to approve such sale

(Docket No. 330) (the "Emergency Motion"). Due to the efforts of Skadden and the Debtors'

other professionals, the Valeant bid on January 29, 2015, of $296 million, exceeded the qualified

bid minimum by $21 million or 7.6%. After the Application Period, through the further efforts

and negotiations of Skadden and the Debtors' other professionals, Valeant signed an amended

and restated acquisition agreement with the Debtors with a price of $400 million, $125 million or

45.5% above the qualified bid minimum, which bid was granted stalking horse status by the

Court by order of February 5, 2015 (Docket No. 355) (the "Stalking Horse Order"), and which

bid was declared the successful bid for the Sale by notice dated February 10, 2015 (Docket No.

369). On February 19, 2015, Valeant signed a second amended and restated acquisition

agreement (Docket No. 400), and on February 20, 2015, the Court approved the sale of the

Debtors' assets to Valeant (Docket No. 410).

23.    During the Application Period, Skadden professionals assisted the Debtors

with the post-petition marketing process, working with the Debtors and the Debtors' other

professionals to (i) negotiate with prospective bidders as to the possible terms of the Sale, (ii)

draft documents accordingly, (iii) prepare materials relating to potential acquisition agreements, including disclosure schedules, and (iv) respond to due diligence requests and other inquiries received from potential bidders.

24.    In relation to the Emergency Motion, on January 29, 2015, Skadden furthermore moved for an order shortening the notice period prior to which the Emergency Motion could be heard (Docket No. 331) (the "Motion to Shorten"). On January 30, 2015, the Court granted the Motion to Shorten (Docket No. 334). The Court heard the Emergency Motion on February 5, 2015, allowing for selection of Valeant as stalking horse bidder.

25.    In connection with this matter, Skadden professionals devoted a total of 755.4 hours, for which compensation is sought in the amount of $670,657.00.

**B.    Reorganization Plan / Plan Sponsors**
**Amount Sought: $111,995.00**

26.    Skadden professionals assisted the Debtors in the development of a draft form of plan of liquidation that contemplates distributions to creditors and liquidation of the Debtors' estates following the Sale to Valeant (the "Plan"). In connection with the same, Skadden professionals advised the Debtors on various issues and strategy decisions related to the plan process and analyzed numerous issues related to plan structure, the classification and treatment of claims and interests, and distribution and implementation considerations. These efforts entailed considerable work preparing, reviewing, and evaluating different strategic alternatives and formulations in consultation with the Debtors and the Debtors' other professionals.

27.    In connection with this matter, Skadden professionals devoted a total of 136.2 hours, for which compensation is sought in the amount of $111,995.00.

**C.    Reports and Schedules**
        <u>**Amount Sought: $106,500.50**</u>

28.    Skadden, along with the Debtors' other retained professionals, assisted the

Debtors with the preparation of various reports and schedules required by the Bankruptcy Code

and the Bankruptcy Rules, including schedules of assets and liabilities and statements of

financial affairs for each of the Debtors (the "<u>Schedules and Statements</u>"), and drafted the global

notes thereto. Skadden professionals assisted with the filing of the Schedules and Statements for

each of the Debtors on January 9, 2015 (Docket Nos. 246 to 253). Skadden professionals

likewise assisted the Debtors in filing their Summaries of Schedules on updated official forms on

January 28, 2015 (Docket Nos. 325 to 328).

29.    In connection with this matter, Skadden professionals devoted a total of

155.8 hours, for which compensation is sought in the amount of $106,500.50.

## MATTERS BETWEEN $10,000 AND $100,000

30.    During the Application Period, Skadden professionals devoted significant

time to various additional key matters, each of which had a time value of between $10,000 and

$100,000. These matters were as follows:

**D.    Disclosure Statement / Voting Issues**
        <u>**Amount Sought: $91,050.00**</u>

31.    Skadden professionals spent considerable time and resources preparing a

draft form of disclosure statement with respect to the Plan. Skadden professionals worked with

the Debtors and the Debtors' other professionals to identify and describe the Debtors'

background and significant developments in the Chapter 11 Cases that warranted disclosure.

Furthermore, they devoted significant time to developing and preparing draft solicitation

procedures and related ballots, notices, and forms.

32.      In connection with this matter, Skadden professionals devoted a total of 161.8 hours, for which compensation is sought in the amount of $91,050.00.

**E.      Tax Matters**
**Amount Sought: $82,424.00**

33.      Skadden professionals worked to minimize tax liability and maximize estate value through evaluation of both legal rules and factual circumstances. Skadden tax professionals reviewed drafts of the acquisition agreement and reviewed the final order establishing notice and hearing procedures for trading in equity securities of the Debtors (Docket No. 162), and evaluated issues involving the Sale, the Plan, the draft form of disclosure statement with respect to the Plan, alternative disposition transactions, existing equity ownership, and trading in the securities of Dendreon Corporation. In particular, Skadden professionals evaluated ways to preserve value.

34.      In connection with this matter, Skadden professionals devoted a total of 89.6 hours, for which compensation is sought in the amount of $82,424.00.

**F.      Executory Contracts**
**Amount Sought: $75,253.00**

35.      The December 17, 2014, order (i) establishing bidding procedures relating to the Sale, (ii) establishing procedures for the Debtors to enter into stalking horse agreement with bid protections in connection with the Sale, (iii) establishing procedures relating to the assumption and assignment of certain executory contracts and unexpired leases, including notice of proposed cure amounts, (iv) approving form and manner of notice of all procedures, protections, schedules, and agreements, (v) scheduling a hearing to consider the proposed sale, and (vi) granting certain related relief (Docket No. 195) (the "Bidding Procedures Order") set deadlines by which the Debtors were required to provide notice of cure amounts for contract and lease counterparties. Skadden professionals assisted the Debtors in preparing and filing schedules

of proposed cure amounts. Specifically, on January 2, 2015, Skadden professionals filed a notice of cure amount with respect to executory contracts or unexpired leases to be assumed and assigned (Docket No. 230) (the "Notice of Cure Amount"). Numerous contractual counterparties responded to the Notice of Cure Amount, generally seeking to clarify the appropriate cure amount. Skadden professionals worked to respond to inquiries and objections from, inter alia, (a) Tulane University (Docket No. 283), (b) Taos Mountain, Inc. (Docket No. 290), (c) Oracle (Docket No. 293), (d) Fisher Clinical Services, Inc. (Docket No. 294), (e) Radiant Systems, Inc. (Docket No. 295), (f) Recall Total Information Management, Inc. (Docket No. 298), (g) Piedmont – Bridgewater NJ, LLC (Docket No. 300), (h) the University of Minnesota (Docket No. 304), (i) Majestic Airport Center III Building 3, LLC, and NM Majestic Holdings, LLC (Docket No. 310), and (j) Cigna Health and Life Insurance Company (Docket No. 311), as well as many informal inquiries and reconciliations. Skadden professionals worked expeditiously to respond to these counterparties. On January 26, 2015, Skadden professionals filed an amended notice of cure amount with respect to executory contracts or unexpired leases to be assumed and assigned (Docket No. 314).

36.     In connection with this matter, Skadden professionals devoted a total of 100.5 hours, for which compensation is sought in the amount of $75,253.00.

**G.    Retention / Fee Matters (SASM&F)**
       **Amount Sought: $61,155.50**

37.     In order to comply with the Interim Compensation Procedures, Skadden prepared its first monthly fee application and materials relating thereto, including time entries detailing services rendered and descriptions of expenses, for the months of both November and December, and narratives explaining the matters to which the most time was billed in a given period.

38.     In addition to fee application preparation, Skadden professionals did additional work to comply with the disclosure requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Retention Order. In particular, Skadden worked on an ongoing basis to update its list of parties in interest in the Chapter 11 Cases, which it shared with other professionals in the Chapter 11 Cases, and used that list to query its client databases regarding its possible relationships with, or connections to, those parties in interest, resulting, shortly after the Application Period, in the filing of the first supplemental declaration of Kenneth S. Ziman (Docket No. 348) in support of Skadden's retention application (Docket No. 72) (the "Retention Application"), providing relationship and connection disclosures.

39.     In connection with this matter, Skadden professionals devoted a total of 102.9 hours, for which compensation is sought in the amount of $61,155.50.

**H.    Creditor Meetings / Statutory Committees**
       **Amount Sought: $50,060.50**

40.     Skadden and the Debtors' other restructuring professionals have communicated extensively with the Committee and its counsel regarding the status of the Chapter 11 Cases and related matters. Skadden professionals reviewed Committee comments to drafts of documents and otherwise worked with the Committee to negotiate and reach consensual resolution on many of the issues in the Chapter 11 Cases. In addition, Skadden professionals worked with the U.S. Trustee in connection with creditor issues. In particular, on January 14, 2015, Skadden professionals attended and participated in the continuation of the meeting of creditors under Bankruptcy Code section 341(a), continued from December 8, 2014, held at the offices of the U.S. Trustee (Docket No. 264). Furthermore, Skadden professionals spent significant time responding to Committee information requests.

41.     In connection with this matter, Skadden professionals devoted a total of 52.3 hours, for which compensation is sought in the amount of $50,060.50.

**I.     Claims Admin.**
       **Amount Sought: $31,653.50**

42.     Skadden professionals prepared, and, on January 15, 2015, filed, the Debtors' motion for order (i) establishing bar dates for filing claims against the Debtors and (ii) approving form and manner of notice thereof (Docket No. 275) (the "Bar Date Motion"), and responded to inquiries and comments thereto. Additionally, Skadden professionals reviewed, analyzed, and responded to scheduled and filed claims. Furthermore, Skadden professionals assisted the Debtors in evaluating potential indemnification claims of their past and present directors and officers in relation to outstanding litigation.

43.     In connection with this matter, Skadden professionals devoted a total of 43.1 hours, for which compensation is sought in the amount of $31,653.50.

**J.     Case Administration**
       **Amount Sought: $30,527.50**

44.     Skadden professionals devoted substantial resources to case administration matters and worked with the Debtors' management and professionals to ensure that the Debtors conducted their affairs in accordance with the Bankruptcy Code and applicable non-bankruptcy law. Moreover, Skadden professionals held a regularly scheduled weekly teleconference with the Debtors' management and professionals in order to stay coordinated and reduce expenses by ensuring that professional efforts were not duplicated. Skadden professionals also held a regularly scheduled weekly teleconference with AlixPartners, LLP, to address efficiently in a smaller group matters of case administration and coordination not necessary to raise during the larger teleconference.

45.     Therefore, this matter reflects time spent by Skadden professionals on a variety of tasks that were necessary to facilitate the efficient administration of the Chapter 11 Cases' day-to-day activities, including: (a) preparing case calendars and task lists; (b) conducting weekly meetings and conferring with the Debtors to track the status of pending case matters, and address case developments; and (c) general communications with creditors and parties in interest with respect to case matters.

46.     Moreover, Skadden professionals spent significant time (i) preparing materials for the Court and for parties in interest, including notices and draft orders, (ii) consensually resolving issues raised by non-Debtor parties in interest, minimizing issues needing to be resolved by hearing, (iii) communicating with, and addressing concerns of, numerous parties in interest, (iv) preparing and coordinating mailing and service of notices, (v) working with the Debtors' management team and other professionals, and (vi) monitoring the Court's docket.

47.     Additionally, Skadden professionals were responsible for assisting the Debtors with obtaining an extension to their time to comply with the requirements of 11 U.S.C. § 345 affecting their bank accounts. On January 6, 2015, Skadden certified an order to this affect (Docket No. 234), which was entered on January 7, 2015 (Docket No. 239).

48.     In connection with this matter, Skadden professionals devoted a total of 48.4 hours, for which compensation is sought in the amount of $30,527.50.

**K.     Employee Matters (General)**
**Amount Sought: $27,421.00**

49.     As of the Petition Date, the Debtors had approximately 700 employees. Skadden professionals provided general advice and guidance to the Debtors related to various employee matters in the context of the Chapter 11 Cases. In particular, Skadden professionals

worked on matters of employment law involving (i) treatment of employee bonuses, (ii)

employee benefits, (iii) evaluation of the Worker Adjustment and Retraining Notification Act

(the "WARN Act") and notices thereunder, (iv) severance plans, (v) COBRA matters, (vi)

evaluation of and revisions to draft acquisition agreements being negotiated with potential

bidders, and (vii) review of employee communications, including offer letters and separation

agreements.

50.     In connection with this matter, Skadden professionals devoted a total of

33.1 hours, for which compensation is sought in the amount of $27,421.00.

**L.      General Corporate Advice**
        **Amount Sought: $27,388.00**

51.     Skadden professionals assisted and advised the Debtors on various matters

of general corporate governance, including (i) drafting of board resolutions, (ii) board meetings,

(iii) press releases and public relations, and (iv) employee communications.

52.     In connection with this matter, Skadden professionals devoted a total of

23.6 hours, for which compensation is sought in the amount of $27,388.00.

**M.     Regulatory and SEC Matters**
        **Amount Sought: $25,968.50**

53.     Skadden professionals spent significant time assisting the Debtors with

various regulatory matters. In particular, Skadden professionals assisted Dendreon Corporation

(the "Company") with its filings with the Securities and Exchange Commission, assisting

especially with matters related to the Company's current and periodic reporting requirements

under the Securities Exchange Act of 1934. Skadden professionals assisted the Company with

the drafting, printing and filing of five (5) Current Reports on Form 8-K during the Application

Period.

54.    In connection with this matter, Skadden professionals devoted a total of 40.8 hours, for which compensation is sought in the amount of $25,968.50.

**N.    Retention / Fee Matters / Objections (Others)**
    <u>**Amount Sought: $24,925.00**</u>

55.    Skadden professionals assisted with the retention and compensation of the Debtors' other professionals. For example, Skadden professionals prepared and on January 5, 2015, filed the Debtors' third notice of filing of ordinary course professional declarations (Docket No. 231). This notice allowed for the retention by the Debtors of Arnold & Porter LLP, a multinational law firm that provides European Union regulatory compliance advice to the Debtors. Similarly, Skadden professionals assisted with the preparation and January 29, 2015, filing of the Debtors' application for order authorizing employment and retention of Ernst & Young LLP as the Debtors' tax advisors (Docket No. 329), allowing the Debtors to receive critical domestic and overseas services including preparation of their 2014 tax returns.

56.    In connection with each professional's retention, Skadden has further assisted with the preparation and filing of additional documents, such as supplemental declarations pertaining to potential conflicts of interest. For example, Skadden professionals prepared and on January 28, 2015, filed a notice of filing of supplemented and amended ordinary course professional declarations (Docket No. 321). This notice provided additional disclosures to all parties in interest regarding the services of PricewaterhouseCoopers LLP and Hunton & Williams LLP, two of the Debtors' professionals.

57.    Finally, Skadden professionals facilitated the compensation of the Debtors' other restructuring professionals pursuant to the Interim Compensation Procedures. Skadden professionals assisted Lazard Frères & Co. LLC, the Debtors' investment banker, and AlixPartners, LLP, the Debtors' restructuring advisor, with the review and January 30, 2015,

filing of their first monthly applications for allowance of compensation and reimbursement of expenses for the period from November 10, 2014, through December 31, 2014 (Docket Nos. 338 and 339, respectively).

58.     In connection with this matter, Skadden professionals devoted a total of 37.1 hours, for which compensation is sought in the amount of $24,925.00.

## O.    Vendor Matters
## Amount Sought: $22,714.00

59.     The Debtors' operations depend upon just-in-time manufacture and delivery of PROVENGE, a complex and time-sensitive treatment. Timely performance of services contracted for by the Debtors' vendors is critical for the Debtors, as supply interruptions could affect patient health, impair revenues, and lower brand and enterprise value. Therefore, one of the primary aims in the Chapter 11 Cases has been to ensure supply chain continuity and to avoid operational interruptions. In order to assist the Debtors in achieving this aim, Skadden professionals have been active in communicating with vendors throughout the bankruptcy process. Accordingly, Skadden professionals have responded to numerous issues relating to the Debtors' suppliers. These issues have involved, inter alia, (i) "critical vendor" treatment, (ii) review of contractual provisions, (iii) contractual amendment, (iv) the quality of vendor performance, (v) potential stipulations, compromises, and settlements, and preparation of motions and other documentation thereto under Bankruptcy Rule 9019, and (vi) potential license termination.

60.     In connection with this matter, Skadden professionals devoted a total of 28.0 hours, for which compensation is sought in the amount of $22,714.00.

## MATTERS UNDER $10,000

61.     During the Application Period, Skadden professionals also devoted time to other matters, each of which had a time value of less than $10,000. These matters were as follows: (i) Litigation ($6,965.00), (ii) Leases ($6,906.00), (iii) U.S. Trustee Matters ($5,160.00), and (iv) Nonworking Travel Time ($672.00). In connection with these matters, Skadden professionals devoted a total of 25.3 hours, for which compensation is sought in the amount of $19,703.00.

## REASONABLENESS OF FEES AND DISBURSEMENTS

62.     Bankruptcy Code section 330 authorizes the Court to award "reasonable compensation for actual, necessary services rendered by the . . . professional person . . . ." 11 U.S.C. § 330. In order to evaluate a request for allowance of fees by a professional person, a court must determine whether the services rendered were actual and necessary and the fees requested reasonable. Skadden respectfully submits that its request for a monthly award of compensation for the Application Period satisfies that standard.

63.     In accordance with the factors enumerated in 11 U.S.C. § 330, the amount requested herein by Skadden is fair and reasonable in light of (i) the nature and complexity of the Chapter 11 Cases, (ii) the time and labor required to effectively represent the Debtors, (iii) the nature and extent of the services rendered, (iv) Skadden's experience, reputation, and ability, (v) the value of Skadden's services, and (vi) the cost of comparable services other than in a case under the Bankruptcy Code.

## I.     Nature and Complexity of the Chapter 11 Cases

64.     As should be evident from the summary of Skadden's services described above, the Chapter 11 Cases are large and complex. Their characteristics have required Skadden to develop case management and staffing solutions to enhance efficiency, and to employ a

streamlined case management structure that generally consists of small, core teams and assigns discrete tasks to other attorneys, all with the goal of avoiding duplicative and unnecessary work. Moreover, Skadden's efforts have been important in promptly and consensually resolving the vast majority of disputes that arose during the Application Period and in preserving enterprise value.

65.     Given the size of the Chapter 11 Cases, the expedited timetable involved, the dual-track nature of the Debtors' potential sale or recapitalization, and the variety of issues that have arisen in the Chapter 11 Cases, many of which have needed to be addressed simultaneously, there have been circumstances where a number of Skadden professionals have had to be present at, and to participate in, discussions, negotiations, team meetings, and Court hearings. Skadden believes that it has, through the narratives herein and the time entries attached hereto, articulated satisfactory reasons for attendance and participation by multiple attorneys under those circumstances.

## II.    Experience of Skadden

66.     Skadden's experience has also benefited the Debtors' estates. Skadden is among the largest law firms in the world, and has one of the most experienced restructuring groups. As more fully set forth in the Retention Application, Skadden's restructuring and other attorneys have extensive experience with similar large and fast-moving bankruptcy cases. Accordingly, Skadden's depth of experience ensured that pressing issues were addressed promptly.

## III.    Comparable Services

67.     An award of compensation must be based on the cost of comparable services other than in a bankruptcy case. Skadden's rate structure for the Chapter 11 Cases is consistent with its rate structure charged to other clients in non-bankruptcy matters. Additionally,

25

Skadden's rate structure was disclosed clearly in the Retention Application, which the Court approved. Finally, the amounts sought by Skadden are consistent with the fees, charges, and disbursements incurred in other chapter 11 cases of similar size, complexity, and expected duration. Accordingly, the cost of comparable service supports this Application, and the services performed during the Application Period more than warrant the allowance of compensation.

### ALLOWANCE OF COMPENSATION

68.     Because of the benefits realized by the Debtors, the nature of the Chapter 11 Cases, the standing at the bar of the attorneys who have rendered services, the amount of work done, the time consumed, the skill required, and the contingent nature of the compensation, Skadden requests that it be allowed at this time compensation for 80% of the value of the professional services rendered during the Application Period.

69.     Skadden will return to the Court to seek reimbursement for the remaining 20% of the value of professional services rendered during the Application Period. Skadden reserves the right to seek payment for work performed or expenses incurred during the Application Period but not yet reflected in its time records or to amend the amounts listed herein to correct any bookkeeping errors. In the event that a subsequent review reveals that additional professional services have been rendered or expenses incurred on behalf of the Debtors during the Application Period, which were not processed by Skadden's accounting system in time to be included in this Application, Skadden reserves the right to seek those additional fees and expenses by subsequent application to the Court.[4]

70.     Other than among Skadden and its affiliated law practices and their members, no agreements or understandings exist between Skadden and any other person or

---

[4]     Skadden further reserves the right to request additional compensation at a later date for time spent preparing this Application.

persons for the sharing of compensation received, or to be received, for professional services rendered in or in connection with the Chapter 11 Cases, nor will any such agreements or understandings be made except as permitted pursuant to Bankruptcy Code section 504(b)(1).

## REIMBURSEMENT OF EXPENSES

71.     As stated above, a complete description of each expense incurred during the Chapter 11 Cases is attached hereto as <u>Exhibit C</u>. Additionally, a table summarizing the expenses for the Application Period is included at the front of this Application. Skadden's policies require all attorneys to retain and submit for review receipts and invoices for all disbursements incurred through outside vendors. Skadden maintains all receipts and invoices related to each client's disbursement account in a central storage facility, and these records can be produced upon request. Skadden has disbursed, and requests reimbursement of, $2,028.21, which represents actual and necessary expenses incurred in the rendition of professional services in the Chapter 11 Cases.

## NOTICE

72.     Skadden has provided notice of this Application to: (i) The Debtors, Dendreon Corporation, Dendreon Holdings, LLC, Dendreon Manufacturing, LLC, and Dendreon Distribution, LLC, 200 Crossing Boulevard, Bridgewater, New Jersey 08807, Attention: Robert L. Crotty; (ii) Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attention: David Buchbinder; (iii) Counsel to the Unaffiliated Noteholders, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attention: Steven D. Pohl; (iv) Counsel to the Deerfield Noteholders, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, Attention: John C. Longmire; (v) Counsel to the Official Committee of Unsecured Creditors, Sullivan & Cromwell LLP, 125

Broad Street, New York, New York 10004, Attention: Michael H. Torkin; and (vi) Counsel to

the Official Committee of Unsecured Creditors, Young Conaway Stargatt & Taylor, LLP,

Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attention: Pauline K.

Morgan. Skadden submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

73.    No previous request for the relief sought herein has been made to this

Court or any other court.

## CERTIFICATE OF COMPLIANCE AND WAIVER

74.    The undersigned representative of Skadden certifies that she has reviewed

the requirements of Local Rule 2016-2 and that this Application substantially complies with that

Local Rule. To the extent that this Application does not comply in all respects with the

requirements of Local Rule 2016-2, Skadden believes that such deviations are not material and

respectfully requests that any such requirement be waived.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, Skadden respectfully requests approval and payment of (i) monthly compensation for professional services rendered as attorneys for the Debtors in the sum of $1,167,516.80 for 80% of the fees incurred during the Application Period, (ii) reimbursement of actual and necessary expenses incurred in the sum of $2,028.21, and (iii) such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
       February 24, 2015

                 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                 */s/ Sarah E. Pierce*
                 Anthony W. Clark (I.D. No. 2051)
                 Sarah E. Pierce (I.D. No. 4648)
                 One Rodney Square
                 P.O. Box 636
                 Wilmington, Delaware 19899-0636
                 Telephone: (302) 651-3000
                 Fax: (302) 651-3001

                 - and -

                 Kenneth S. Ziman
                 Raquelle L. Kaye
                  Four Times Square
                 New York, New York 10036-6522
                 Telephone: (212) 735-3000
                 Fax: (212) 735-2000

                 - and -

                 Felicia Gerber Perlman
                 155 N. Wacker Drive
                 Chicago, Illinois 60606-1720
                 Telephone: (312) 407-0700
                 Fax: (312) 407-0411

                 Counsel for Debtors and Debtors in Possession