IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                                  :       Chapter 11
:
DENDREON CORPORATION, et al.,                           :       Case No. 14-12515 (LSS)
:
Debtors.[1]                                             :       Jointly Administered
:
:       **Obj. Due: 3/24/2015 at 4:00 p.m. (Eastern)**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x       **Hearing Date: 4/14/2015 at 2:00 p.m. (Eastern)**

### DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY CODE SECTION 1121(d) EXTENDING EXCLUSIVE PERIODS DURING WHICH DEBTORS MAY FILE AND SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") for entry of an order, substantially in the form attached hereto, under section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), extending the exclusive periods during which the Debtors may file and solicit acceptances of a chapter 11 plan. In support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of the cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicate for the relief requested herein is Bankruptcy Code section 1121(d).

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Dendreon Corporation (3193), Dendreon Holdings, LLC (8047), Dendreon Distribution, LLC (8598) and Dendreon Manufacturing, LLC (7123). The address of the Debtors' corporate headquarters is 1301 2nd Avenue, Seattle, Washington 98101.

3.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), the Debtors consent to the entry of a final judgment or order with respect to the Motion

if it is determined that this Court would lack Article III jurisdiction to enter such final order or

judgment absent the consent of the parties.

## BACKGROUND

4.      On November 10, 2014 (the "Petition Date"), the Debtors each

commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code

(collectively, the "Chapter 11 Cases"). The factual background regarding the Debtors, including

their business operations, their corporate and capital structure, their capital raising and

restructuring activities, and the events leading to the Debtors' decision to file the Chapter 11

Cases, is set forth in the Declaration of Robert L. Crotty in Support of Chapter 11 Petitions and

First Day Pleadings (Docket No. 3) (the "First Day Declaration").[2]

5.      The Debtors continue to manage and operate their business as debtors in

possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.      On November 19, 2014, the Office of the United States Trustee for the

District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured

Creditors in the Chapter 11 Cases (the "Committee") pursuant to Bankruptcy Code section

1102(a) (Docket No. 92). No trustee has been appointed in the Chapter 11 Cases.

7.      On February 5, 2015, the Court entered an order approving Valeant

Pharmaceuticals International, Inc. ("Valeant"), as the stalking horse bidder in connection with

the sale of substantially all of the Debtors' non-cash assets (the "Sale") (Docket No. 355). On

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the First Day
Declaration.

February 10, 2015, Valeant was the successful bidder (Docket No. 369). On February 20, 2015,

the Court entered an order approving the Sale of all or substantially all of the Debtors' assets to

Drone Acquisition Sub Inc. (the "Purchaser"), a direct, wholly-owned subsidiary of Valeant

(Docket No. 410), pursuant to the terms of the Second Amended and Restated Acquisition

Agreement, dated February 19, 2015. The Sale to the Purchaser closed on February 23, 2015.

## RELIEF REQUESTED

8.      Bankruptcy Code section 1121(b) provides for an initial 120-day period

after the Petition Date within which a debtor has the exclusive right to file a chapter 11 plan (the

"Plan Period"). Bankruptcy Code section 1121(c) further provides for an initial 180-day period

after the Petition Date within which a debtor has the exclusive right to solicit and obtain

acceptances of a plan filed by the debtor during the Plan Period (the "Solicitation Period" and,

together with the Plan Period, the "Exclusive Periods"). In the Chapter 11 Cases, the Plan Period

is set to expire on March 10, 2015, and the Solicitation Period is set to expire on May 9, 2015.[3]

9.      By this Motion, the Debtors request entry of an order (i) extending each of

the Exclusive Periods for 110 days, whereby the Plan Period would be extended through

Monday, June 29, 2015,[4] and the Solicitation Period would be extended through Thursday,

August 27, 2015, and (ii) prohibiting any party, other than the Debtors, from filing a competing

plan or soliciting acceptances of a competing plan during the extended Exclusive Periods. If

granted, the 110-day extensions of the Exclusive Periods will be without prejudice to (i) the

---

[3]     Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the current Exclusive Periods will automatically extend the Exclusive Periods until the Court acts on the Motion, without the necessity for entry of a bridge order.

[4]     Pursuant to Rule 9006(a)(1)(C), while 110 days from March 10, 2015, is Sunday, June 28, 2015, the Plan Period would be extended through Monday, June 29, 2015.

rights of the Debtors to seek further extensions of the Exclusive Periods and (ii) the right of any

party in interest to seek to reduce the Exclusive Periods for cause.

**BASIS FOR RELIEF**

10.    Under Bankruptcy Code section 1121(d), the Court may extend the

Exclusive Periods for cause. Specifically, section 1121(d)(1) provides: "[O]n request of a party

in interest made within the respective periods specified in subsections (b) and (c) of this section

and after notice and a hearing, the court may for cause . . . increase the 120-day period or the

180-day period referred to in this section." Although the Bankruptcy Code does not define

"cause" for purposes of an extension under section 1121(d), courts have identified several key

factors relevant to a determination of whether cause exists under Bankruptcy Code section

1121(d), including the following: (i) the size and complexity of the case, (ii) the necessity of

sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate

information, (iii) the existence of good faith progress toward reorganization, (iv) the fact that the

debtor is paying its bills as they become due, (v) whether the debtor has demonstrated reasonable

prospects for filing a viable plan, (vi) whether the debtor has made progress in negotiations with

its creditors, (vii) the amount of time which has elapsed in the case, (viii) whether the debtor is

seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's

reorganization demands, and (ix) whether an unresolved contingency exists. See In re Dow

Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); In re Express One Int'l, Inc.,

194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); see also In re Gibson & Cushman Dredging Corp.,

101 B.R. 405, 409 (E.D.N.Y. 1989); In re Borders Grp., Inc., 460 B.R. 818, 822 (Bankr.

S.D.N.Y. 2011); In re Adelphia Commc'ns Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); In

re Adelphia Commc'ns Corp., 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); In re Cent. Jersey

Airport Servs., 282 B.R. 176, 184 (Bankr. D.N.J. 2002); cf. Geriatrics Nursing Home, Inc. v.

First Fid. Bank, N.A. (In re Geriatrics Nursing Home, Inc.), 187 B.R. 128, 132-33 (D.N.J. 1995)

("The opportunity to negotiate its plan unimpaired by competition . . . is meant to allow the

debtor time to satisfy . . . creditors and win support for its restructuring . . . and thus ensure its

survival as a business.").

11.     Section 1121(d) of the Bankruptcy Code authorizes a bankruptcy court to

extend the exclusivity periods by as much as eighteen months (to file a plan) and twenty months

(to solicit votes) for cause, based upon the relevant facts and circumstances. Debtors are

frequently granted such extensions in light of the particular circumstances of a case, in order to

provide adequate opportunity to develop a plan of reorganization. See, e.g., In re Savient Pharm.,

Inc., Case No. 13-12680 (MFW) (Bankr. D. Del. Feb. 21, 2014) (granting an initial 90-day

extension of the exclusive periods); In re NE Opco, Inc., Case No. 13-11483 (CSS) (Bankr. D.

Del. Oct. 30, 2013) (granting an initial 90-day extension of the exclusive periods); In re Exide

Techs., Case No. 13-11482 (KJC) (Bankr. D. Del. Oct. 15, 2013) (granting an initial 235-day

extension of the exclusive filing period and a 229-day extension of the exclusive solicitation

period); In re Yarway Corp., Case No. 13-11025 (BLS) (Bankr. D. Del. Aug. 16, 2013) (granting

an initial 120-day extension of the exclusive filing period and a 121-day extension of the

exclusive solicitation period); In re LCI Holding Co., Inc., Case No. 12-13319 (KG) (Bankr. D.

Del. Apr. 5, 2013) (granting an initial 143-day extension of the exclusive periods).[5]

12.     In evaluating whether an extension under Bankruptcy Code section

1121(d) is warranted, courts are given maximum flexibility to review the particular facts and

circumstances of each case. See First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc., 64

B.R. 963, 965 (D. Del. 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to

---

[5]     Because of the voluminous nature of the orders cited herein, they are not attached to this Motion. Copies of
these orders, however, are available on request.

either reduce or increase the period of exclusivity in its discretion."); <u>In re Borders Grp., Inc.</u>, 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); <u>In re Amko Plastics, Inc.</u>, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) ("[A]pplying the 'flexibility' in dealing with the question of extension of exclusivity which the cases suggest . . . we hold that debtor has shown cause for the extension . . . ."); <u>In re Pub. Serv. Co.</u>, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent . . . [is] to promote maximum flexibility . . . ."); H.R. Rep. No. 95-595, at 232 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6191 ("[T]he bill allows the flexibility for individual cases that is unavailable today.").

13.    The Debtors have been under the protection of chapter 11 for less than four months' time, and during this short period have made significant and material progress in administering the Chapter 11 Cases. The extension requested in this Motion will provide the Debtors and their advisors with the opportunity to fully negotiate, confirm, and implement the terms of a chapter 11 plan for the distribution of assets to creditors. Thus, as discussed in more detail below, the facts and circumstances of the Chapter 11 Cases warrant the requested extension of the Exclusive Periods.

**A.      The Debtors Have Made Substantial Progress in the Chapter 11 Cases**

14.    <u>First Day Motions and Related Relief</u>. The Debtors have made substantial progress in the Chapter 11 Cases. Initially, the Debtors' management focused on stabilizing the Debtors' business and responding to the many time-consuming demands that inevitably accompany chapter 11 filings. In addition to the day-to-day management of the Company, the Debtors' management, employees, and advisors devoted substantial time and effort over the first three months of the cases to a number of tasks, including the filing of numerous "first day" and "second day" motions, all of which have been approved on a final basis and were necessary to

facilitate a smooth transition into chapter 11, including authorization to (i) continue use of the Debtors' existing cash management system, bank accounts, business forms, and deposit and investment practices, (ii) pay prepetition wages, compensation, and employee benefits, and continue certain employee benefit programs, (iii) honor certain prepetition obligations to customers, continue customer programs, and pay Medicaid and other obligations, (iv) maintain existing insurance policies, pay all insurance obligations arising thereunder, and renew, revise, extend, supplement, change or enter into new insurance policies, (v) pay certain prepetition taxes and related obligations, (vi) provide utility companies with adequate assurance of payment, and (vii) pay prepetition claims of certain critical vendors. The Debtors have also obtained approval of orders facilitating the efficient administration of the Chapter 11 Cases, including orders (i) directing joint administration of the Chapter 11 Cases, (ii) approving implementation of a key employee incentive plan, and (iii) establishing bar dates for filing claims against the Debtors and approving the form and manner of notice thereof. Furthermore, the Debtors have obtained approval of orders advancing their goal of value maximization, including orders (i) authorizing the Debtors to assume plan support agreements, (ii) establishing bidding procedures relating to the sale of substantially all of the Debtors' non-cash assets, establishing procedures for the Debtors to enter into a stalking horse agreement with bid protections in connection with a sale of substantially all of the Debtors' non-cash assets, establishing procedures relating to the assumption and assignment of certain executory contracts and unexpired leases, including notice of proposed cure amounts, and approving form and manner of notice of all procedures, protections, schedules, and agreements, (iii) approving a stalking horse bidder and authorizing bid protections in connection with the sale of substantially all of the Debtors' non-cash assets, and (iv) approving the sale of the Debtors' assets free and clear of all liens, claims,

encumbrances, and interests, and authorizing the assumption and assignment of certain executory contracts and unexpired leases. In addition, the Debtors have (i) implemented procedures to comply with the reporting and disclosure requirements generally imposed on debtors in possession, (ii) filed their schedules of assets and liabilities and statements of financial affairs, (iii) filed their notice of cure amount with respect to executory contracts or unexpired leases to be assumed and assigned, (iv) reviewed hundreds of contracts, and (v) concluded the marketing and sale process, as discussed below, with the aim of maximizing value for the Debtors' estates.

15.    The Sale. In the first four months of the Chapter 11 Cases, the Debtors and their professionals undertook a thorough and successful marketing and sale process for substantially all of the Debtors' non-cash assets, dedicating substantial time and effort to seeking to maximize the value of the estates for the benefit of all parties in interest. On December 17, 2014, the Debtors entered into amended and restated plan support agreements with their largest creditors, as part of a dual path of third-party sale or plan transaction with a "standalone plan" backstop. On December 23, 2014, the Court permitted these plan support agreements to be assumed, with certain amendments consensually negotiated with the Committee, the Debtors, and the Supporting Noteholders (Docket No. 215). On January 29, 2015, the Debtors entered into a stalking horse acquisition agreement with Valeant, and filed a motion seeking to have Valeant approved as the stalking horse bidder in connection therewith (Docket No. 330). On February 5, 2015, the Court entered an order approving Valeant as the stalking horse bidder, with a revised acquisition agreement (Docket No. 355). On February 10, 2015, Valeant was the successful bidder (Docket No. 369). On February 20, 2015, the Court entered an order approving the Sale of all or substantially all of the Debtors' assets to the Purchaser (Docket No. 410), pursuant to the terms of the Second Amended and Restated Acquisition Agreement, dated February 19, 2015.

The Sale to the Purchaser closed on February 23, 2015. Working first with prospective bidders and later with Valeant, the Debtors spent considerable time and resources reviewing contracts, working with parties in interest, and otherwise arranging for an orderly transition of the business.

16.    The Debtors submit that their demonstrated progress to date provides ample cause to extend the Exclusive Periods.

**B.    The Need for Sufficient Time to Negotiate and Prepare Adequate Information**

17.    As discussed above, the Debtors have established a path forward in the Chapter 11 Cases in part by maintaining the support of major parties in interest in the cases. Through lengthy and detailed negotiations with numerous constituencies, the Debtors and their professionals have executed a Sale that they believe maximizes the value of the estates for the benefit of all parties in interest. In addition, the Debtors have already begun the process of preparing a plan of liquidation and negotiating with their creditors regarding the provisions of the plan. Accordingly, the Debtors believe that it is reasonable to request additional time to prepare, file, and confirm a chapter 11 plan based on the Sale. Granting the requested extensions will facilitate the Debtors' efforts by providing the Debtors with a full and fair opportunity to propose and solicit a plan without the distraction of ill-formed competing plans. See In re Energy Conversion Devices, Inc., 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan. It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests." (citations and internal quotation marks omitted)). Accordingly, the Debtors submit that this factor weighs in favor of the requested extension of the Exclusive Periods.

**C.      The Extension Sought Will Advance the Cases and Will Not Harm Any Party**

18.      This Motion is the Debtors' first request for an extension of the Exclusive Periods, and the request will not unfairly prejudice or pressure the Debtors' creditor constituencies or grant the Debtors any unfair bargaining leverage. Indeed, the requested extension is consistent with the plan support agreements with certain of the Debtors' largest creditors, which contemplate the formulation of a plan for the benefit of all creditor constituencies. Furthermore, the extension requested herein is consistent with the purpose of chapter 11 and will not prejudice or pressure any party in interest. Accordingly, the Debtors believe that the requested extension is warranted and appropriate under the circumstances.

**D.      The Debtors Are Meeting Their Postpetition Obligations**

19.      Courts considering whether to extend a debtor's exclusive periods also may assess whether the debtor is paying its debts when they come due. See In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). Here, the Debtors are paying their undisputed postpetition obligations as they come due.

20.      In sum, the Debtors have made significant progress thus far in the Chapter 11 Cases and are taking steps to propose a viable chapter 11 plan, thus warranting the relief requested in the Motion.

**NOTICE**

21.      Notice of this Motion will be given to (i) the U.S. Trustee, (ii) counsel to the Committee, (iii) counsel to the Unaffiliated Noteholders, (iv) counsel to the Deerfield Noteholders, and (v) all parties entitled to notice under Local Rule 2002-1. The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

22.     No prior request for the relief sought in this Motion has been made to this or any other Court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated:  Wilmington, Delaware
       March 6, 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Sarah E. Pierce*
Anthony W. Clark (I.D. No. 2051)
Sarah E. Pierce (I.D. No. 4648)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

Kenneth S. Ziman
Raquelle L. Kaye
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

- and -

Felicia Gerber Perlman
155 N. Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

Counsel for Debtors and Debtors in Possession