IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

DENDREON CORPORATION, et al.,

Debtors.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:  Chapter 11
:
:  Case No. 14-12515 (LSS)
:
:  Jointly Administered
:
:  **Rel. Doc. Nos.: 471, 575, 605, 607, 698, 700, 705, 706, 714, 718, 728, 733, 738, 739, 742, 743, 745, 754, _____**

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER MODIFYING AND CONFIRMING SECOND AMENDED PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS

Dendreon Corporation ("Dendreon"),[2] Dendreon Holdings, LLC, Dendreon

Distribution, LLC, and Dendreon Manufacturing, LLC, the debtors and debtors in possession in

the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions for relief under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 10, 2014.

The Debtors proposed the Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code

Proposed by the Debtors (Docket No. 471) (as amended, supplemented, or otherwise modified,

the "Plan"). The Debtors filed the First Amended Plan of Liquidation Pursuant to Chapter 11 of

the Bankruptcy Code Proposed by the Debtors (Docket No. 605). The Debtors filed the Second

Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the

Debtors (Docket No. 698). The Debtors filed the Plan Supplement to Second Amended Plan of

Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors (Docket

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Dendreon Corporation (3193), Dendreon Holdings, LLC (8047), Dendreon Distribution, LLC (8598) and Dendreon Manufacturing, LLC (7123). The address of the Debtors' corporate headquarters is 601 Union Street, Suite 4900, Seattle, Washington 98101.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed by them in the Plan.

No. 700) (the "Plan Supplement") and the Second Plan Supplement to Second Amended Plan of

Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors (Docket

No. 738) (the "Second Plan Supplement" and, together with the Plan Supplement, the "Plan

Supplements"). The United States Bankruptcy Court for the District of Delaware (this "Court")

entered an order (Docket No. 596) (the "Solicitation Procedures Order") on April 15, 2015,

approving the Disclosure Statement with Respect to First Amended Plan of Liquidation Pursuant

to Chapter 11 of the Bankruptcy Code Proposed by the Debtors (the "Disclosure Statement") in

all respects pursuant to Bankruptcy Code section 1125. The Debtors filed the Declaration of

James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots

Cast on the First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code

Proposed by the Debtors (Docket No. 728) (the "Voting Certification") on May 27, 2015. This

Court established, in the Solicitation Procedures Order, June 2, 2015, at 10:00 a.m. (Eastern

Time) as the date and time of the hearing pursuant to Bankruptcy Code section 1129 to consider

confirmation of the Plan (the "Confirmation Hearing"). An Affidavit of Service of Solicitation

Materials was executed by James Daloia of Prime Clerk LLC and filed with this Court (Docket

No. 678) (the "Affidavit of Service") with respect to the mailing of the Notice of (A)

Confirmation Hearing with Respect to Plan of Liquidation Pursuant to Chapter 11 of the

Bankruptcy Code Proposed by the Debtors and (B) Related Objection Deadline (Docket No.

607) and the other solicitation materials in respect of the Plan in accordance with the Solicitation

Procedures Order. An affidavit of publication was filed with this Court (Docket No. 681) (the

"Affidavit of Publication") with respect to publication of notice of the Confirmation Hearing in

accordance with the Solicitation Procedures Order. A statement in support of confirmation of the

Plan was filed by the Committee (Docket No. 739) (the "Statement in Support"). Objections to

confirmation of the Plan were filed or raised by the Donahue Group of Ad Hoc Shareholders

(Docket No. 705), Oracle America, Inc. (Docket No. 706), Michael E. Caradimitropoulo (Docket

Nos. 714 and 718), and the United States, on behalf of its agency, the Department of Veterans

Affairs (Docket No. 733) (collectively, the "Objections"). This Court reviewed the Plan, the

Disclosure Statement, the Solicitation Procedures Order, the Voting Certification, the Affidavit

of Service, the Affidavit of Publication, the Statement in Support, the Objections, and all other

papers before this Court in connection with confirmation of the Plan. This Court heard the

statements of counsel in support of confirmation at the Confirmation Hearing, as reflected in the

record at the Confirmation Hearing. This Court considered the Debtors' Memorandum of Law (i)

in Support of Confirmation of the Second Amended Plan of Liquidation Pursuant to Chapter 11

of the Bankruptcy Code Proposed by the Debtors and (ii) in Response to Objections Thereto

(Docket No. 742) (the "Confirmation Brief"). This Court considered all testimony presented and

evidence admitted at the Confirmation Hearing, including the Declaration of Robert L. Crotty,

President, General Counsel, and Secretary of Dendreon Corporation in Support of Confirmation

of the Second Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code

Proposed by the Debtors (Docket No. 743) (the "Declaration in Support"). This Court finds that

(i) notice of the Confirmation Hearing and the opportunity for all parties in interest to object to

confirmation of the Plan were adequate and appropriate, in accordance with Rules 2002(b)(2)

and 3017(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2002-

1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "Local Rules"), and the Solicitation Procedures Order, as

to all parties to be affected by the Plan and the transactions contemplated thereby, and (ii) the

legal and factual bases set forth at the Confirmation Hearing and as set forth in this order (this

"Confirmation Order") establish just cause for the relief granted herein. Therefore, after due deliberation and sufficient cause appearing therefor, this Court hereby makes the following Findings of Fact, Conclusions of Law, and Order:

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.     Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)). This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference of the United States District Court for the District of Delaware, dated February 29, 2012. Confirmation of the Plan is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code, and to determine whether the Plan should be confirmed and a Final Order entered with respect thereto. Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     Burden of Proof. The Debtors, as the proponents of the Plan, have the burden of proving the elements of Bankruptcy Code section 1129(a) by a preponderance of the evidence, and, as set forth below, the Debtors have met that burden.

C.     Modification of the Plan. The Debtors have made certain nonmaterial modifications to the Plan as set forth herein (the "Modifications"). Pursuant to Bankruptcy Code section 1127(a) and Bankruptcy Rule 3019, none of the Modifications require additional disclosure under Bankruptcy Code section 1125 or resolicitation of votes under Bankruptcy Code section 1126, nor do they require that the holders of Claims in the voting Classes be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The Plan as modified by the Modifications shall constitute the Plan submitted to this Court for confirmation.

D. Objections to Confirmation. As presented at the Confirmation Hearing, if resolved, the consensual resolutions of certain Objections satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules, are in the best interests of the Debtors and their Estates, and are supported by the record of the Confirmation Hearing, and therefore should be approved. All Objections that were not resolved by agreement at or prior to the Confirmation Hearing are overruled, or are otherwise disposed of, as set forth herein and on the record of the Confirmation Hearing.

E. Compromise and Settlement in Connection with the Plan. All of the settlements and compromises pursuant to and in connection with the Plan comply with the requirements of Bankruptcy Code section 1123(b)(3) and Bankruptcy Rule 9019.

F. Compliance with Bankruptcy Rule 3016. The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with this Court satisfies Bankruptcy Rule 3016(b).

G. Compliance with Bankruptcy Rule 3017. The Debtors have given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d).

H. Transmittal and Mailing of Materials; Notices. The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018. The Plan was transmitted to all creditors entitled to vote on the Plan, and sufficient time was prescribed for such creditors to accept or reject the Plan, thereby satisfying the requirements of Bankruptcy Rule 3018.

I. Receipt and Tabulation of Votes. The procedures used by Prime Clerk LLC to receive and tabulate Ballots from the Holders of Claims in the voting Classes, as set forth in the Voting Certification, were proper and appropriate and in compliance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all

other applicable rules, laws, and regulations. As described in the Voting Certification, which certified both the method of and the results of the voting, the Plan was accepted by all Impaired Classes entitled to vote. The Debtors, therefore, obtained the requisite acceptance both in number and amount for confirmation of the Plan.

J.    Plan Compliance With 11 U.S.C. § 1129. As set forth below and as demonstrated by the record in the Chapter 11 Cases, the Debtors have met their burden of proving the elements of Bankruptcy Code sections 1129(a) and (b).

K.    Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). As set forth and demonstrated below, the Plan complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the orders of this Court with respect to the Plan, thus satisfying the requirements of Bankruptcy Code section 1129(a)(1).

(i)    Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). The Plan complies fully with the requirements of Bankruptcy Code sections 1122 and 1123. The Plan's classifications conform to the requirements of the Bankruptcy Code and separately classify Claims based on valid business and legal reasons. The Plan's classification scheme has a rational basis because it is based on the respective legal rights of each Holder of a Claim against or Interest in the Estates and was not proposed to create a consenting impaired class and, thereby, manipulate class voting. Article II of the Plan designates the classification of Claims and Interests.

(ii)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan complies fully with the requirements of Bankruptcy Code section 1123(a)(2).

Article III of the Plan specifies which Classes of Claims and Interests are not Impaired under the Plan.

(iii)    Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan complies fully with the requirements of Bankruptcy Code section 1123(a)(3). Article III of the Plan specifies the treatment of Classes of Claims and Interests under the Plan, including those which are Impaired.

(iv)    No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan complies fully with the requirements of Bankruptcy Code section 1123(a)(4). As reflected in the treatment set forth in Article III of the Plan, the treatment of each of the Claims and Interests in each particular Class is the same as the treatment of each of the other Claims or Interests in such Class.

(v)    Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan complies fully with the requirements of Bankruptcy Code section 1123(a)(5). The Plan provides adequate means for implementation of the Plan through, among other things, (a) substantive consolidation of the Estates, (b) merger and subsequent dissolution of the Debtors, (c) cancellation of all securities of the Debtors, (d) dissolution of the Committee, (e) appointment of a Plan Administrator, (f) provisions for the establishment and administration of adequate reserves on behalf of the Liquidating Debtors (or the Liquidating Trust, if established), (g) preservation of certain Causes of Action, (h) establishment of an Oversight Committee, (i) provisions governing distributions under the Plan, (j) rejection of all Executory Contracts and Unexpired Leases that the Debtors have not assumed, and (k) establishment of releases, exculpations, and injunctions.

(vi)    <u>Voting Power of Equity Securities (11 U.S.C. § 1123(a)(6))</u>.

Bankruptcy Code section 1123(a)(6) requires that a plan provide for the inclusion

in a corporate debtor's charter provisions prohibiting the issuance of nonvoting

equity securities. Section 5.2(b) of the Plan provides that the certificate and

articles of incorporation and by-laws of each Debtor will be amended and will,

among other things, prohibit the issuance of non-voting equity securities to the

extent prohibited by Bankruptcy Code section 1123(a)(6). In addition, Exhibit D

of the Plan Supplement provided forms of the applicable governance documents,

which prohibit the issuance of non-voting securities. As such, the requirements of

Bankruptcy Code section 1123(a)(6) are satisfied.

(vii)    <u>Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))</u>.

Section 5.2(a) of the Plan provides that, immediately following the occurrence of

the Effective Date, the members of the boards of directors of the Debtors shall be

deemed to have resigned. The Plan's provisions for the selection and appointment

of the Plan Administrator are consistent with the interests of creditors and equity

security holders and with public policy. Specifically, pursuant to section

1129(a)(5) of the Bankruptcy Code, the Plan Supplements provide that (i)

acceptable representatives of the Plan Administrator shall be the sole officer and

director of the parent Debtor, (ii) the Plan Administrator shall be the sole

shareholder of the parent Debtor, and (iii) acceptable representatives of the Plan

Administrator shall be the sole officer and (to the extent the sole member does not

act as the sole manager) the sole manager of each of the Debtors other than the

parent Debtor. In addition, the Plan Supplements contain various documents that

disclose the identity of the Plan Administrator, identify representatives who may

fulfill these roles on and after the Effective Date, and provide procedures for

determining successors and replacements. Bankruptcy Code section 1123(a)(7) is

therefore satisfied.

    (viii)   Discretionary Contents of Plan (11 U.S.C. § 1123(b)). The Plan's

provisions are appropriate and consistent with the provisions of the Bankruptcy

Code.

    (ix)   Cure of Defaults (11 U.S.C. § 1123(d)). Section 7.3 of the Plan

provides that any monetary amounts by which each executory contract and

unexpired lease to be assumed pursuant to the Plan is in default, if any, shall be

satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure. For these

contracts and leases, the amounts necessary to cure their defaults, if any, shall be

determined in accordance with the underlying agreement and applicable

nonbankruptcy law.

L.    Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The

Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, the Local Rules, and the orders of this Court with respect to the solicitation of acceptances

or rejections of the Plan, thus satisfying the requirements of Bankruptcy Code section

1129(a)(2).

M.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have

proposed the Plan, including all documents necessary to effectuate the Plan, including but not

limited to those contained in the Plan Supplements, in good faith and not by any means

forbidden by law, as evidenced by, among other things, the totality of the circumstances

surrounding the formulation of the Plan, the record of the Chapter 11 Cases and the recoveries of

Holders of Claims and Interests thereunder, thus satisfying the requirements of Bankruptcy Code

section 1129(a)(3).

        N.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). All

payments that have been made or are to be made by the Debtors, the Liquidating Debtors, the

Plan Administrator, or the Liquidating Trust (if established) under the Plan or by any Person

issuing securities or acquiring property under the Plan, for services or for costs and expenses in,

or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the

Chapter 11 Cases including administrative expense claims and substantial contribution claims

under Bankruptcy Code sections 503 and 507, have been approved by, or will be subject to the

approval of, this Court as reasonable, thus satisfying the requirements of Bankruptcy Code

section 1129(a)(4).

        O.      Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). Section 5.2(f) of

the Plan provides that the Plan Administrator shall serve as the sole officer, director or manager

(as applicable) of each of the Liquidating Debtors. The identity of the Plan Administrator has

been disclosed in the Plan Supplements as Verdolino & Lowey, P.C., and the affiliations of the

Plan Administrator have been disclosed in the Declaration of Craig R. Jalbert in Support of the

Debtors' Application for Entry of an Order Pursuant to Bankruptcy Code Sections 105 and 363

Authorizing the Employment of Verdolino & Lowey, P.C. as Wind-Down Consultants, *Nunc*

*Pro Tunc* to April 22, 2015, filed on April 30, 2015 (Docket No. 670-3). The Plan's provisions

for the selection and appointment of the Plan Administrator are consistent with the interests of

creditors and equity security holders and with public policy. Bankruptcy Code section 1123(a)(5)

is therefore satisfied.

P.      No Rate Changes (11 U.S.C. § 1129(a)(6)). The Debtors' businesses do
not involve the establishment of rates over which any regulatory commission will have
jurisdiction after confirmation of the Plan. Thus, Bankruptcy Code section 1129(a)(6) is
inapplicable to the Chapter 11 Cases.

Q.      Best Interest of Creditors Test (11 U.S.C. § 1129(a)(7)). Bankruptcy Code
section 1129(a)(7) requires that each Holder of a Claim or Interest in an Impaired Class accept
the Plan, or receive or retain under the Plan property having a value, as of the Effective Date of
the Plan, that is not less than the amount that such Holder would receive or retain on account of
such Claim or Interest if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on
such date. The Disclosure Statement and the other evidence proffered or adduced at the
Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other
evidence or challenged by any objection to confirmation of the Plan, and (iii) establish that each
Holder of an Impaired Claim or Interest, as the case may be, in such Impaired Classes has either
accepted the Plan, or will receive or retain under the Plan property having a value, as of the
Effective Date of the Plan, that is not less than the amount that such Holder would receive or
retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date, thus
satisfying the requirements of Bankruptcy Code section 1129(a)(7).

R.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Bankruptcy
Code section 1129(a)(8) requires that for each Class of Claims or Interests under the Plan, such
Class has either accepted the Plan or is not Impaired under the Plan. Unimpaired Classes 1, 2,
and 8 are conclusively presumed to have accepted the Plan without the solicitation of
acceptances or rejections pursuant to Bankruptcy Code section 1126(f). Impaired Classes 3 and 4
have voted to accept the Plan. Because Holders of Claims or Interests in Impaired Classes 5, 6,

and 7 neither received nor retained any property under the Plan, they are deemed to have rejected the Plan under Bankruptcy Code section 1126(g).[3] For Classes 5, 6, and 7, the requirements of Bankruptcy Code section 1129(a)(8) have not been met, thereby requiring application of Bankruptcy Code section 1129(b). The Plan satisfies Bankruptcy Code section 1129(b) with respect to Classes 5, 6, and 7.

S.    Treatment of Administrative and Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims as set forth in sections 3.1(a), 3.1(b), and 3.2(a) of the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9).

T.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). As set forth in the Voting Certification, the Plan has been accepted by Impaired Classes 3 and 4, determined without inclusion of any acceptance of the Plan by any insider, thus satisfying the requirements of Bankruptcy Code section 1129(a)(10).

U.    Feasibility (11 U.S.C. § 1129(a)(11)). The Plan proposed by the Debtors provides for the consolidation of the Estates, the merger and dissolution of the Debtors, and the designation of the Plan Administrator to distribute Cash or other consideration to unsecured creditors in accordance with the Plan Administrator Agreement and the terms of the Plan. The Disclosure Statement, the Declaration in Support, and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence or challenged by any objection to confirmation of the Plan, and (iii) establish that the Plan is feasible, thus satisfying the requirements of Bankruptcy Code section 1129(a)(11).

---

[3]    In the unlikely event that Classes 3 and 4 receive a 100% recovery, including accrued but unpaid postpetition interest, and the wind-down costs of the Chapter 11 Cases are satisfied, Classes 6 and 7 may recover residual value, if any, subject to the conditions set forth in the Plan.

V.    Payment of Fees (11 U.S.C. § 1129(a)(12)). The Debtors have paid, or will pay, on or prior to the Effective Date, all amounts due under 28 U.S.C. § 1930, thus satisfying the requirements of Bankruptcy Code section 1129(a)(12). The Plan Administrator shall pay, from and after the Effective Date, statutory fees due to the U.S. Trustee in accordance with 28 U.S.C. § 1930 until the Chapter 11 Cases are closed or converted or final decrees are entered. In addition, the Plan Administrator shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines.

W.    Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)). Sections 1129(a)(13)-(16) are inapplicable as the Debtors (i) do not provide retiree benefits,[4] (ii) have no domestic support obligations, (iii) are not individuals, and (iv) are a for-profit business.

X.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). Holders of Claims and Interests in Classes 5, 6, and 7 will receive no distributions under the Plan and, accordingly, are deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g).[5] The Debtors presented uncontroverted evidence at the Confirmation Hearing that the Plan does not discriminate unfairly and is fair and equitable with respect to the treatment of Claims and Interests in Classes 5, 6, and 7 because, as required by Bankruptcy Code section 1129(b)(2)(B)(ii) and (C)(ii), there are no Holders of Claims or Interests junior to the Holders of Claims and Interests in Classes 5, 6, and 7 that will receive or retain under the Plan any property

---

[4]    As defined in section 1114 of the Bankruptcy Code, "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical or hospital care benefits, or benefits in the event of sickness, accident, disability or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under the Bankruptcy Code.

[5]    In the unlikely event that Classes 3 and 4 receive a 100% recovery, including accrued but unpaid postpetition interest, and the wind-down costs of the Chapter 11 Cases are satisfied, Classes 6 and 7 may recover residual value, if any, subject to the conditions set forth in the Plan.

on account of such junior Claims or Interests. Thus, the Plan satisfies Bankruptcy Code section 1129(b) and may be confirmed notwithstanding its failure to satisfy Bankruptcy Code section 1129(a)(8). The Plan shall be binding upon the members of all Classes, including Classes 5, 6, and 7, upon confirmation and the occurrence of the Effective Date.

Y.    Confirmation of Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan that has been filed in the Chapter 11 Cases that has been found to satisfy the requirements of subsections (a) and (b) of Bankruptcy Code section 1129. Accordingly, the requirements of Bankruptcy Code section 1129(c) have been satisfied.

Z.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the requirements of section 5 of the Securities Act of 1933, as amended, and no governmental unit has requested that this Court deny confirmation of the Plan on such basis, thus satisfying the requirements of Bankruptcy Code section 1129(d).

AA.    Satisfaction of Confirmation Requirements. Based on the foregoing, the Plan satisfies all of the requirements for confirmation set forth in Bankruptcy Code section 1129 and should be confirmed.

BB.    Good Faith Solicitation (11 U.S.C. § 1125(e)). Based upon the record before this Court in the Chapter 11 Cases, the Debtors, the Claims Agent, and each of their respective members, officers, directors, agents, advisors, attorneys, employees, equity holders, partners, affiliates, and representatives have acted in "good faith" within the meaning of Bankruptcy Code section 1125(e) in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all their respective activities relating to the Plan and their participation in the activities described in

Bankruptcy Code section 1125, and are entitled to the protections afforded by Bankruptcy Code section 1125.

CC.    Executory Contracts. The Debtors have exercised reasonable business judgment in determining that, except as otherwise provided in the Plan, the Sale Order, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, they will reject all of the prepetition executory contracts and unexpired leases to which any Debtor is a party, unless such contract or lease (i) previously has been assumed or rejected by the Debtors, (ii) expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume or reject pending before the Court as of the Confirmation Date or (iv) is identified in the Second Plan Supplement as a contract to be assumed. The Debtors have also exercised reasonable business judgment in determining that they will assume the contracts identified in the Second Plan Supplement. Nothing contained in the Plan shall constitute an admission by any Debtor that any such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor or its successors and assigns has any liability thereunder.

DD.    Agreements and Other Documents. The Debtors have made adequate and sufficient disclosure of (i) the adoption of new or amended and restated certificates of incorporation and bylaws or similar constituent documents for the Debtors or the Liquidating Debtors, (ii) the Distributions to be made pursuant to the Plan, (iii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to any of the foregoing, and (iv) the other matters provided for under the Plan involving the corporate structure of the Debtors or the Liquidating Debtors.

EE.    Substantive Consolidation. The substantive consolidation contemplated by section 5.1 of the Plan, which is unopposed, is consistent with, and permissible under, applicable

law in the Third Circuit. No party has objected to substantive consolidation, and, almost

unanimously, voting parties both by dollar amount and number have voted in favor of the Plan,

which is predicated upon entry of an order substantively consolidating the Estates and Chapter

11 Cases for all purposes, including voting, Distribution, and Confirmation.

   FF. <u>Likelihood of Satisfaction of Conditions Precedent to Confirmation</u>. All

conditions precedent to confirmation set forth in Article VIII of the Plan have been satisfied, will

be satisfied by entry of this Confirmation Order, or have been duly waived.

   GG. <u>Retention of Jurisdiction</u>. This Court finds that it may properly retain

jurisdiction over the matters set forth in Article XI of the Plan and Bankruptcy Code section

1142.

   **Accordingly, it is hereby ORDERED, ADJUDGED, AND DECREED THAT:**

**A.** **Confirmation of the Plan**

   1. <u>Approval of the Plan</u>. The Plan, which consists of the Plan as filed on

March 10, 2015, as subsequently amended, supplemented, or otherwise modified, including all

exhibits (including, but not limited to, those exhibits filed in the Plan Supplements), provisions,

terms, and conditions thereto, is approved and confirmed as having satisfied all of the

requirements of chapter 11 of the Bankruptcy Code. The terms of the Plan, as modified, are

incorporated herein by reference and are an integral part of this Confirmation Order. A copy of

the Plan is attached hereto as <u>Exhibit A</u>.

   2. <u>Provisions of Plan and Order Non-Severable and Mutually Dependent</u>.

The provisions of the Plan and this Confirmation Order, including the findings of fact and

conclusions of law set forth herein, are non-severable and mutually dependent. This

Confirmation Order constitutes a judicial determination that each term and provision of the Plan,

as it may have been altered or modified herein, is valid and enforceable pursuant to its terms.

3.     <u>Findings of Fact and Conclusions of Law</u>. The findings of fact and conclusions of law of this Court set forth herein and at the Confirmation Hearing shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, as made applicable herein by Bankruptcy Rule 9014, and the findings and conclusions of this Court at the Confirmation Hearing are incorporated herein by reference. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and vice versa.

4.     <u>Objections</u>. All Objections, to the extent not already withdrawn, waived, or settled, and all reservations of rights included therein, shall be, and hereby are, overruled.

**B.     Plan Classification and Treatment**

5.     All Claims and Interests shall be, and hereby are, classified and treated as set forth in the Plan. The Plan's classification scheme shall be, and hereby is, approved.

6.     The classifications set forth in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by any creditor as representing the actual classification of such Claims under the Plan for distribution purposes, and (d) shall not bind the Debtors, the Liquidating Debtors, the Plan Administrator, any liquidating trustee, or any third party Disbursing Agent.

7.     The treatment of Claims and Interests as provided for in the Plan is approved.

**C.     Effects of Confirmation**

8.     <u>Enforceability of Plan</u>. Pursuant to Bankruptcy Code sections 1123(a), 1141(a), and 1142, and the provisions of this Confirmation Order, the Plan shall be, and hereby is, valid, binding, and enforceable, notwithstanding any otherwise applicable non-bankruptcy

law. The Debtors are authorized and directed to, and authorized and directed to take all actions

necessary or appropriate to, enter into, amend, modify, implement, and consummate, as

necessary, all agreements or documents created under or arising in connection with the Plan,

without further order of this Court, in accordance with the provisions of the Plan, and only

consistent therewith.

9.       <u>Authorization to Implement the Plan</u>. Upon the entry of this Confirmation

Order, the Debtors, the Liquidating Debtors, the Plan Administrator, any liquidating trustee, and

any third party Disbursing Agent, as applicable, and their respective professionals, are authorized

to take or cause to be taken all actions necessary or appropriate to implement all provisions of,

and to consummate, the Plan, and to execute, enter into, or otherwise make effective all

documents arising in connection therewith, prior to, on, and after the Effective Date. All such

actions taken or caused to be taken shall be, and hereby are, authorized and approved by this

Court, such that no further approval, act, or action need be taken under any applicable law, order,

rule, or regulation, including, without limitation, (a) the incurrence of all obligations

contemplated by the Plan and the making of Distributions and (b) the implementation of all

settlements and compromises as set forth in or contemplated by the Plan.

10.      The Debtors are authorized to make payments required to be made under

the Plan at any time on and after the Effective Date.

11.      The Plan Administrator or its designee is authorized to execute and file tax

returns on behalf of the Debtors after the Effective Date.

12.      <u>Non-Discharge of Claims</u>. Pursuant to Bankruptcy Code section

1141(d)(3), confirmation of the Plan will not discharge Claims against the Debtors; <u>provided,</u>

<u>however</u>, that no Claim Holder or Interest Holder may, on account of such Claim or Interest,

seek or receive any payment or other Distribution from, or seek recourse against, any Debtor or its respective successors, assigns, and/or property, except as expressly provided for in the Plan.

13.     Binding Effect. Notwithstanding the stay contemplated by Bankruptcy Rule 3020(e) and except as otherwise provided in Bankruptcy Code section 1141(d), immediately after entry of this Confirmation Order, the Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, whether or not such Holders shall receive or retain any property or interest in property under the Plan, and their respective successors and assigns, including, but not limited to, the Liquidating Debtors and all other parties in interest in the Chapter 11 Cases. Accordingly, as permitted by Bankruptcy Rule 3020(e), the fourteen (14) day period provided by such rule is hereby waived in its entirety.

14.     Releases, Injunctions, Limitations of Liability, and Exculpation. All releases, injunctions, limitations of liability, and exculpation provisions in the Plan, including, without limitation, those in Article X of the Plan, are fair and equitable and given for valuable consideration and are in the best interest of the Debtors and all parties in interest, and such provisions shall be effective and binding on all persons and entities, to the extent provided therein, and are incorporated in this Confirmation Order as if set forth in full herein and are hereby approved in their entirety.

15.     For the avoidance of doubt, Holders of Class 7 Interests have not and shall not be deemed to have granted, in their capacity as Holders of Class 7 Interests, the releases set forth in Section 10.4(b) of the Plan.

16.     Confirmation of the Plan shall have the effect of, among other things, permanently enjoining all Persons who have held, hold, or may hold Claims against or Interests in the Debtors from taking any of the following actions against any of the Estate(s), the Plan

Administrator, any of the property of the foregoing, the property of the Liquidating Debtors, or

any successors or assigns of the foregoing on account of any such Claims or Interests: (A)

commencing or continuing, in any manner or in any place, any action or other proceeding; (B)

enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or

order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting a setoff or

right of subrogation of any kind against any debt, liability or obligation due to the Debtors; and

(E) commencing or continuing, in any manner or in any place, any action that does not comply

with or is inconsistent with the provisions of the Plan. The releases pursuant to Article X of the

Plan shall also act as a permanent injunction against any party that has provided such releases

from commencing or continuing any action, employment of process, or act to collect, offset, or

recover any Claim released under the Plan to the fullest extent authorized by applicable law.

      17.    <u>United States Reservation of Rights</u>. Notwithstanding any provision to the

contrary in the Plan, the Order confirming the Plan, and any implementing Plan documents

nothing shall affect the rights of the United States to assert setoff and recoupment and such rights

are expressly preserved.

      18.    <u>Cancellation of Interests; Reinstatement of Interests</u>. On the Effective

Date, all Interests in Class 7 shall be cancelled, and each Holder thereof shall not be entitled to,

and shall not receive or retain, any property or interest in property under the Plan; <u>provided</u>,

<u>however</u>, that if Class 3 and Class 4 receive a 100% recovery (including all accrued but unpaid

postpetition interest), and all wind-down costs of the Chapter 11 Cases are satisfied, then each

Holder of an Interest in Class 7, and any Allowed Subordinated Claim in Class 6, shall be

entitled to any residual recovery pursuant to the procedures set forth in the Plan. The Holders of

Interests in Class 7 shall not be entitled to receive further notice in these Chapter 11 Cases after

such Interests have been cancelled, except the Notice of Effective Date (as defined below) and

pursuant to section 6.10 of the Plan (if applicable). On the Effective Date, all Intercompany

Interests shall be reinstated and rendered Unimpaired in accordance with Bankruptcy Code

section 1124 solely for the purpose of preserving the Debtors' corporate structure.

19.     Cancellation of Existing Securities and Agreements. Except as otherwise

provided in the Plan and in any contract, instrument, or other agreement or document created in

connection with the Plan, on the Effective Date and concurrently with the applicable

Distributions made pursuant to Article III of the Plan, any promissory notes, share certificates,

whether for preferred or common stock (including treasury stock), other instruments evidencing

any Claims or Interests, other than a Claim or Interest that is being reinstated and rendered

unimpaired by the Plan, and all options, warrants, calls, rights, puts, awards, commitments, or

any other agreements of any character to acquire such Interests shall be deemed cancelled and of

no further force and effect, without any further act or action under any applicable agreement,

law, regulation, order, or rule, and the obligations of the Debtors under the notes, share

certificates, and other agreements and instruments governing such Claims and Interests shall be

discharged; provided, however, that certain instruments, documents, and credit agreements

related to Claims shall continue in effect solely for the purposes of allowing the agents to make

distributions to the beneficial holders and lenders thereunder. The Final Order Pursuant to

Bankruptcy Code Sections 105(a), 362(a)(3) and 541 and Bankruptcy Rule 3001 Establishing

Notice and Hearing Procedures for Trading in Equity Securities in Debtors (Docket No. 162),

entered on December 9, 2014, shall remain in full force and effect on and after the Effective Date

to enforce any violations of such order that occurred prior to the Effective Date. Notwithstanding

anything in the Plan or herein to the contrary, on the Effective Date and concurrently with the

applicable Distributions made pursuant to the Plan, the 2016 Notes Indenture shall be cancelled except to the extent required for the purposes of permitting the 2016 Notes Trustee to enforce its right to compensation and related lien rights under section 6.07 of the 2016 Notes Indenture, subject to the Plan.

20.    Executory Contracts and Unexpired Leases. Except as otherwise provided in the Plan, the Sale Order, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, each of the Executory Contracts and Unexpired Leases to which any Debtor is a party shall be deemed automatically rejected by the applicable Debtor as of the Effective Date, unless such contract or lease (i) previously has been assumed or rejected by the Debtors, (ii) expired or terminated pursuant to its own terms, (iii) was the subject of a motion to assume or reject pending before this Court as of the Confirmation Date, or (iv) is identified on Exhibit B to the Second Plan Supplement as a contract to be assumed.

21.    This Confirmation Order shall constitute an order of this Court approving (i) the rejections described in Article VII of the Plan; and (ii) the assumptions of the contracts listed on Exhibit B to the Second Plan Supplement, in both cases pursuant to Bankruptcy Code section 365, as of the Effective Date.

22.    If the rejection of an Executory Contract or Unexpired Lease pursuant to Article VII of the Plan gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the applicable Debtor or its Estate, the Liquidating Debtors, or their respective successors or properties unless a Proof of Claim is filed with this Court and served on counsel for the Plan Administrator within thirty (30) days after service of notice of entry of the Confirmation Order.

**D.      Implementation of the Plan**

23.      Substantive Consolidation. In light of the fact that substantive

consolidation will promote a more equitable distribution of the Debtors' assets, the substantive

consolidation of the Chapter 11 Cases and Estates that comprise the Debtors is in the best

interests of the Debtors' stakeholders and is appropriate under Bankruptcy Code section 105(a)

and is hereby approved. After the Effective Date, claims asserted by a creditor against multiple

Debtors, whether on the basis of joint and several liability, guaranty, or other similar theory,

shall be deemed asserted only once against Dendreon without the need for further Court Order.

24.      Merger and Dissolution of the Debtors. Immediately following the

occurrence of the Effective Date, (a) the respective boards of directors of the Debtors shall be

terminated and the members of the boards of directors of the Debtors shall be deemed to have

resigned and (b) the Debtors shall continue to exist as the Liquidating Debtors. On December 31,

2015 (the "Outside Date"), and without further order of this Court, the Affiliate Debtors shall be

deemed merged with and into Dendreon, without the necessity of any other or further actions to

be taken by or on behalf of the Debtors or payments to be made in connection therewith;

provided, however, that the Debtors, the Liquidating Debtors, or the Plan Administrator may

execute and file documents and take all other actions as they deem appropriate relating to the

foregoing corporate actions under the laws of the State of Delaware or other applicable law and,

in such event, all applicable regulatory or governmental agencies shall take all steps necessary to

allow and effect the prompt merger of the Affiliated Debtors as provided herein, without the

payment of any fee, Tax, or charge, and without need for the filing of reports or certificates.

Pursuant to section 5.2(a) of the Plan, as soon as practicable after the Plan Administrator

exhausts substantially all of the assets of the Debtors' Estates, the Plan Administrator may at the

expense of the Debtors' Estates file the necessary paperwork in the State of Delaware to

effectuate the dissolution of Dendreon and resign as the sole shareholder, officer, director, and manager, as applicable, of the Liquidating Debtors. Upon the filing of a certificate as described in section 5.2(a) of the Plan, Dendreon shall be deemed dissolved for all purposes without the necessity for any other or further actions other than the filing of a motion for final decree.

25.    In furtherance of the liquidation of the Liquidating Debtors and as necessary to comply with section 8.1(h) of the Asset Purchase Agreement, on or prior to December 31, 2015, a liquidating trust may be established pursuant to documentation, including a liquidating trust agreement, approved by the Liquidating Debtors, the Plan Administrator, and the Oversight Committee, for the primary purpose of receiving assets of the Estates, continuing the wind-down of such Estates in a commercially reasonable but expeditious manner, and distributing any such assets pursuant to the Plan, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to and consistent with, the liquidating purpose of the trust (any such trust, the "Liquidating Trust").

26.    If established, the Liquidating Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code to the Holders of Claims, consistent with the terms of the Plan; provided, however, that the Plan Administrator in its role as liquidating trustee, after consultation with the Oversight Committee, may make an election under Treasury Regulations Section 1.468B-9(c)(2)(ii) to treat the Liquidating Trust (or any portion thereof) as a disputed ownership fund. Accordingly, unless an election is made to treat the Liquidating Trust as a disputed ownership fund, such Holders shall be treated for U.S. federal income tax purposes, (i) as direct recipients of an undivided interest in the assets transferred to

the Liquidating Trust and as having immediately contributed such assets to the Liquidating Trust, and (ii) thereafter, as the grantors and deemed owners of the Liquidating Trust and, thus, the direct owners of an undivided interest in the assets held by the Liquidating Trust. All parties (including Claimholders) shall report consistent with the valuation of the assets transferred to the Liquidating Trust as established by the Plan Administrator or its designee. The Plan Administrator is hereby appointed in such instance pursuant to Bankruptcy Code section 1123(b)(3)(B) to handle all of the Debtors' tax matters, including, without limitation, the filing of all tax returns, and the handling of tax audits and proceedings, of the Debtors. The liquidating trustee shall be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a) or as a disputed ownership fund.

27.    Closure of the Chapter 11 Cases. On the Effective Date, the Chapter 11 Cases of Dendreon Holdings, LLC (Case No. 14-12516 (LSS)), Dendreon Distribution, LLC (Case No. 14-12517 (LSS)), and Dendreon Manufacturing, LLC (Case No. 14-12518 (LSS)), shall be closed upon submission of an appropriate order to this Court under certification of counsel, following which any and all proceedings that could have been brought or otherwise commenced in the Chapter 11 Cases of the Affiliate Debtors shall be brought or otherwise commenced in Dendreon's Chapter 11 Case, Case No. 14-12515 (LSS), provided that all monthly operating reports and quarterly fees attributable to the cases to be closed have been filed and paid, respectively, prior to the cases being closed.

28.    Limited Release of Liens. On the Effective Date, all mortgages, deeds of trust, liens, or other security interests against property of the Estates shall be released, subject to the requirements of section 3.2(b) of the Plan.

29.     Compliance with the Asset Purchase Agreement. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, nothing in the Plan or this Confirmation Order shall eliminate any post-closing obligations of the Debtors under the Asset Purchase Agreement, including, without limitation, that (i) the Valeant Shares may be distributed proportionately solely to the Holders of the Allowed 2016 Noteholder Claims provided that the total amount of Allowed General Unsecured Claims does not exceed $200 million, and (ii) Dendreon shall liquidate as determined for U.S. federal income tax purposes no later than December 31, 2015. As provided in the Solicitation Procedures Order, the offer and sale of the Valeant Shares pursuant to the Plan is exempt from the registration requirements of the Securities Act of 1933, as amended, and similar state and local statutes pursuant and subject to section 1145 of the Bankruptcy Code.

30.     United States Trustee Fees. All fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid by the Debtors on or before the Effective Date. After the Effective Date, the Plan Administrator, on behalf of the Liquidating Debtors, shall pay quarterly fees to the U.S. Trustee until the Chapter 11 Cases are closed or converted and/or the entry of final decrees. In addition, the Plan Administrator shall file post-confirmation quarterly reports in conformance with the U.S. Trustee Guidelines.

31.     Section 1146(a) Waiver. Pursuant to Bankruptcy Code section 1146(a), any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and all state or local governmental officials or agents shall forego the collection of any such tax or governmental

assessment and accept for filing and recordation instruments or other documents without the payment of any such tax or governmental assessment.

32.   Transfer of Evidentiary Privileges. On the Effective Date, pursuant to section 5.4 of the Plan, the Liquidating Debtors and the Plan Administrator shall succeed to the evidentiary privileges, including attorney–client privilege, formerly held by the Debtors.

33.   Governmental Approvals Not Required. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

34.   Plan Administrator Agreement. The form of Amended Plan Administrator Agreement attached as Exhibit A to the Second Plan Supplement is hereby approved, and the Debtors are authorized to execute and to take any action necessary or appropriate to implement, effectuate, or consummate the Plan Administrator Agreement. The appointment of Verdolino & Lowey, P.C., as Plan Administrator is hereby approved.

35.   Oversight Committee. The appointment of (i) John C. Longmire, Esq., on behalf of Willkie Farr & Gallagher LLP, the designee of the Deerfield Noteholders; (ii) Steven D. Pohl, Esq., on behalf of Brown Rudnick LLP, the designee of the Unaffiliated Noteholders; and (iii) Mark U. Schneiderman PC, the designee of the Official Committee of Unsecured Creditors, to the Oversight Committee is hereby approved. Each of the members of the Oversight Committee shall have all rights, powers, duties, and protections afforded the Oversight Committee and its members under the Plan and the Plan Administrator Agreement.

Compensation for the designees, as set forth in Exhibit G to the Plan Supplement, is hereby approved.

36.    <u>Dissolution of Creditors' Committee</u>. On the Effective Date, the Committee shall be dissolved and its members shall have no further duties, responsibilities, or obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Committee's attorneys, financial advisors, and other agents shall terminate, except with respect to (i) all Professional Fee Claims and (ii) any appeals of this Confirmation Order. All expenses of Committee members and the reasonable fees and expenses of the Committee's Professionals through the Effective Date shall be paid in accordance with the terms and conditions of the Professional Fee Order and/or the Plan, as applicable. Professionals employed by the Committee shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing, and prosecution of final fee applications.

37.    <u>Post-Effective Date Notice Pursuant to Bankruptcy Rule 2002</u>. After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all creditors and other parties in interest (except those listed in the following sentence) must file a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of parties in interest receiving notice of documents pursuant to Bankruptcy Rule 2002 to the Office of the United States Trustee, the Deerfield Noteholders, the Unaffiliated Noteholders, 2016 Notes Trustee, and those creditors who have filed such renewed requests (the "<u>Post-Confirmation Master Service List</u>"); <u>provided</u>, <u>however</u>, that the Plan Administrator also shall serve those parties directly affected by, or having a direct interest in, the particular filing in accordance with

Local Rule 2002-1(b). Notice given in accordance with the foregoing procedures shall be deemed adequate pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

38.     Closure of Utility Deposit Account. The Debtors, the Liquidating Debtors, and/or the Plan Administrator are authorized to close the utility deposit account that was authorized and established pursuant to the Final Order Pursuant to 11 U.S.C. §§ 105(a) and 366 (i) Approving Debtors' Proposed Form of Adequate Assurance of Payment, (ii) Establishing Procedures for Resolving Objections by Utility Companies and (iii) Prohibiting Utility Companies from Altering, Refusing or Discontinuing Service (Docket No. 161). The proceeds of this account shall constitute Available Cash.

39.     Payment of 2016 Notes Trustee Fee Claims. The Debtors or the Liquidating Debtors, on the Effective Date to the extent invoiced, or as soon as reasonably practicable following receipt of redacted invoices post-Effective Date, shall pay the 2016 Notes Trustee Fee Claims incurred through the Effective Date, subject to section 5.14 of the Plan.

40.     Payment of Substantial Contribution Claims. As detailed in subsections III.D.5.d-e of the Disclosure Statement, the Deerfield Noteholders and the Committee Members made substantial contributions to the Chapter 11 Cases within the meaning of Bankruptcy Code section 503(b)(3)(D). Accordingly, the requirements of Bankruptcy Code sections 503 and 1129(a)(4) have been satisfied and the Deerfield Substantial Contribution Claim and the Committee Member Substantial Contribution Claim are Allowed as set forth in the Plan.

41.     Return of Excess Professional Retainers to Estates. For each Ordinary Course Professional, upon payment of its final invoice, and for each Professional, upon approval by this Court of its final fee application, that Ordinary Course Professional or Professional shall promptly apply any retainer it holds as of such date against any unpaid Allowed Professional Fee

Claims or Allowed Claims of that Ordinary Course Professional, and thereafter shall return any

excess retainer amounts to the Liquidating Debtors so as to be received thereby no later than ten

(10) business days after such payment or entry of an order approving such final fee application.

Such payment shall be made in a manner specified in writing by the Plan Administrator.

   42. <u>Return of Utility Deposits to Estates</u>. Each entity that is or that becomes a

former utility of the Debtors or the Liquidating Debtors and that holds a deposit or other form of

adequate assurance of payment on account of the Debtors or the Liquidating Debtors, promptly,

following termination of its service thereto and receipt of payment on its final invoice, shall

apply that retainer or adequate assurance against any postpetition amounts owed and remit to the

Debtors or the Liquidating Debtors any balance remaining, in a manner specified in writing by

the Plan Administrator.

   43. <u>Resolution of Plan Objections</u>.

    (i) <u>Donahue Group</u>. Section 6.10 of the Plan is hereby amended and

restated in its entirety as follows: "Upon the satisfaction of the conditions to recovery set forth in

<u>Section 3.5(a)</u>, the Liquidating Debtors or the Plan Administrator shall file with the Court and

distribute to (i) the nominees of the Holders of Interests in Class 7 and (ii) all Persons who have

filed a Proof of Claim or Proof of Interest prior to the Bar Date asserting that they are Holders of

Interests, as of the cancellation of such Interests on the Effective Date, a notice and blank

registration form. To participate in a Class 7 distribution, if any, Holders of Interests in Class 7

must complete and return the registration form as set forth in the notice within forty-five (45)

days after service of such notice. Only those Holders of Interests whose positions can be verified

by the information provided will be entitled to a distribution, if any. For the avoidance of doubt,

if a Holder of an Interest in Class 7 fails to timely return a form or does not return a complete

form, such Holder shall not be entitled to a distribution, if any, unless otherwise ordered by the Court (provided that in the event that the Liquidating Debtors or the Plan Administrator asserts that any Holder should not receive a distribution because a form is allegedly not complete, such Holder shall be given notice and a reasonable opportunity to cure any defect)."

(ii)    Oracle America. Notwithstanding anything to the contrary in the Confirmation Order or the Plan, the Oracle Agreements (as that term is defined in the Sale Order and as the list of agreements has been revised since entry of the Sale Order by mutual agreement of the Debtors, Purchaser, and Oracle) shall not be deemed rejected pursuant to the terms of the Plan.

(iii)    Banks Litigation. Notwithstanding any other provision in this Order or in the Amended Plan, including that the injunction contained in section 10.6 of the Amended Plan shall be modified and the automatic stay imposed under Bankruptcy Code section 362 be lifted solely to the limited extent necessary to enable the Georgia Federal-court litigation captioned as LaShunda Banks, et. al. v. Dendreon Corporation, Civ. Action No. 1:14-CV-2404 SCJ GGB (the "Georgia Litigation") to proceed following the Effective Date of the Plan to final judgment or settlement; provided, however that LaShunda Banks, Jarrod S. White, Boyce E. Bush, Facia Beysolow, Calvin Richardson, Zalika Howard and their attorneys (collectively, the "Georgia Litigation Plaintiffs") may proceed in the Georgia Litigation to judgment and enforce or execute upon any judgment, which shall include any award of attorney's fees, expenses of litigation, and costs under the applicable federal statutes, entered by a court of competent jurisdiction without further order of this Court, for the amount of any such judgment that is in excess of the combined aggregate amount of One Hundred Thousand ($100,000.00) dollars and within the limit of liability and can be satisfied by the proceeds of the Debtors' Employment

Practices Liability Insurance with National Union Fire Insurance Company of Pittsburgh, P.A.,

policy number 01-587-57-24 (the "Available Claims Coverage"). Any settlement reached from

the Georgia Litigation means that the amount of the settlement agreed upon will be paid by the

insurance proceeds of the above-mentioned policy and such settlement may be enforced through

all available means.

(iv)    Department of Justice.  Notwithstanding any provision to the

contrary in the Sale Order, the Plan, this Confirmation Order, and any implementing Sale and

Plan documents, the following agreements  (collectively, the "VA Contracts") shall only be

assumed and assigned to the Purchaser pursuant to the Debtors' and the Purchaser's compliance

with applicable non-bankruptcy law:

Master Agreement, *and related Pharmaceutical Pricing Agreement,* signed by a representative of the Secretary of
Veteran's Affairs on May 3, 2011; and

Federal Supply Schedule Contract (V797P-2278D).

Moreover, without limiting the foregoing, nothing herein or in the Third Notice

Of Cure Amount With Respect To Previously Omitted Executory Contracts Or Unexpired

Leases To Be Assumed And Assigned [Docket No. 695] (the "Cure Notice") shall: (1) be

interpreted to set cure amounts for the VA Contracts or to require the government to novate or

otherwise consent to the transfer of the VA Contracts to the Purchaser; (2) affect the

government's rights to offset or recoup any amounts due under, or relating to, the VA Contracts;

or (3) divest any tribunal of any jurisdiction it may have to adjudicate any issues arising out of or

with respect to matters involving the VA Contracts; provided, however, that as between

Dendreon Corporation and Purchaser, the provisions of the Asset Purchase Agreement shall

govern which party is responsible for the payment of any Cure Costs (as such term is defined in

the Asset Purchase Agreement).  Notwithstanding anything to the contrary contained in the Plan

or this Confirmation Order, the VA Contracts shall not be deemed rejected as of the Effective

Date. Nothing contained in the Confirmation Order, the Plan, the Sale Order or the Cure Notice,

or any other documents implementing the Sale or the Plan, shall constitute an admission by any

Debtor that the VA Contracts or any other contracts are an Executory Contract or Unexpired

Lease or that any Debtor or its successors and assigns has any liability thereunder.

    44. Authorization to Consummate. The Debtors are authorized to consummate

the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver

(by the required parties) of the conditions precedent to the Effective Date set forth in section 8.2

of the Plan.

    45. Incorporation. The failure to specifically include any particular provision

of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, it

being the intent of this Court that the Plan be by this Confirmation Order confirmed in its

entirety and be incorporated herein by reference.

    46. Notice of Entry of the Confirmation Order and the Occurrence of the

Effective Date. The Debtors and/or their authorized agent shall serve notice of the entry of this

Confirmation Order and the occurrence of the Effective Date (the "Notice of Effective Date"),

substantially in the form attached hereto as Exhibit B, on all creditors and parties in interest in

the Chapter 11 Cases within five (5) business days after the occurrence of the Effective Date.

Notwithstanding the foregoing, no service of the Notice of Effective Date shall be required to be

made upon any person to whom the Debtors mailed (i) a notice of commencement of chapter 11

bankruptcy cases, meeting of creditors and fixing of certain dates, (ii) a notice of bar dates for

filing proofs of claim, or (iii) the solicitation materials referenced in the Affidavit of Service, and

received any such notice or materials returned by the United States Postal Service marked

"undeliverable as addressed," "moved—left no forwarding address," "forwarding order expired," or similar marking or reason, unless the Debtors have been informed in writing by such person of that person's new address. Service of the Notice of Effective Date described herein in the time and manner set forth herein shall constitute due, adequate, and sufficient notice, and no other or further notice shall be necessary.

47.     <u>Modification of Plan</u>. After the Confirmation Date and prior to substantial consummation of the Plan as defined in Bankruptcy Code section 1101(2), the Debtors may, under Bankruptcy Code section 1127(b) (before the Effective Date, with the prior written consent of (i) the Committee, (ii) the Deerfield Requisite Supporting Noteholders, and (iii) the Unaffiliated Requisite Supporting Noteholders), institute proceedings in this Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan; <u>provided</u>, <u>however</u>, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of this Court. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Holder.

48.     <u>Retention of Jurisdiction</u>. Notwithstanding the occurrence of the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, the Plan, and the Plan Administrator Agreement to the fullest extent permitted by law, including, among other things, jurisdiction over the matters set forth in Article XI of the Plan, which provisions are incorporated herein by reference.

49.    <u>Confirmation Order Controls</u>. To the extent that the terms of this

Confirmation Order are inconsistent with the terms set forth in the Plan, the Plan Supplements,

or any of the exhibits thereto, the terms of this Confirmation Order shall govern and control.

50.    <u>Final Order</u>. Notwithstanding Bankruptcy Rules 3020(e), 6004(h),

6006(d), and 7062, or any other applicable Bankruptcy Rule, ~~this Court finds that there is no~~

~~reason for delay in the implementation of this Confirmation Order and, thus,~~ this Confirmation

Order shall be effective and enforceable *at 4:59 pm on June 9, 2015* ~~immediately upon entry, subject to the terms and~~

~~conditions of the Plan.~~

Dated: Wilmington, Delaware

*June 2*____, 2015

*[signature]*
Honorable Laurie Selber Silverstein
UNITED STATES BANKRUPTCY JUDGE